**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Dennis D. RONE, Defendant-Appellant.**

**No. 83–3132.**

United States Court of Appeals,
Seventh Circuit.

Argued June 6, 1984.

Decided Sept. 4, 1984.

George Clifton Edwards, Jr., Circuit Judge, sitting by designation, concurred specially and filed opinion.

Eschbach, Circuit Judge, dissented and filed opinion.

Michael E. Deutsch, Chicago, Ill., for defendant-appellant.

Robert T. Coleman, Asst. U.S. Atty., East St. Louis, Ill., for plaintiff-appellee.

Before CUDAHY, EDWARDS * and ESCHBACH, Circuit Judges.

* Honorable George Clifton Edwards, Jr., United States Court of Appeals for the Sixth Circuit, is sitting by designation.

CUDAHY, Circuit Judge.

This appeal challenging appellant's sentence, imposed after he pled guilty to a one-count information charging him with possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1), presents the first opportunity, at least in this circuit, to consider the new rules governing presentence investigations, Fed.R. Crim.P. 32(a)(1)(A) and (c)(3)(A) and (D). Because the district court did not apply these new rules correctly, we vacate the sentence and remand to the district court for new sentencing.

I

Defendant-appellant, Dennis Rone, pled guilty on October 7, 1983, to a count of cultivating two of ten separate patches of marijuana in the Shawnee National Forest. Rone is a veteran with an honorable discharge and no prior criminal history. At the guilty plea proceedings, Rone admitted having cultivated two of the patches but denied responsibility for any others. The government, however, stated that it was prepared to show, in aggravation of sentencing, that Rone was responsible for at least eight patches. The court noted the "substantial dispute," accepted the guilty plea, ordered a presentence report and set the date of November 21, 1983, for sentencing. Plea to Information at 14–17.

The presentence report indicated that 856 Sinsemillia cannabis plants weighing approximately 1090 pounds and with a street value of $1,646,000 were seized. At the sentencing hearing, defense counsel attempted to clarify the point that Rone claimed responsibility for only two of the patches, which contained approximately 450 to 500 plants (Disposition Hearing at 3; Plea to Information at 15). Defense counsel then stated, "[a]nything else in the presentencing report ... we agree with fully and completely ... and have no additions, corrections, deletions or any other points of clarification." Disposition Hearing at 3. The defense counsel thus never raised any issue concerning the *value* of the marijuana seized, other than his objection to the

amount seized, and the court never directly asked the defendant whether he had seen the report or whether he had any objection to the factual accuracy of the report.

Following defense counsel's statement quoted above, Rone made a personal statement attempting to present mitigating factors. The government then recommended to the court a sentence of four years of incarceration and a fine of $10,000 based upon the seriousness of the crime in light of the fact that, even if the defendant had been responsible for only the two patches to which he admitted, the weight of the marijuana would have still been 520 pounds with a street value of over $750,000. The court sentenced Rone to three years imprisonment and an additional special parole term of three years. During the sentencing hearing, the court made the following comments:

> There is a substantial amount of marijuana involved in this. I suppose to some extent it's anybody's speculation as to the total amount that would have been realized from it had it gone on the street, but it looks like it was in the neighborhood of maybe a million dollars .... I bring it [the question of the number of patches involved] up because it is my impression in talking with different people involved in this matter that have talked with you, and the overall knowledge I have about the matter is that there was a certain amount of sophistication involved in this; and I think you are a fairly sophisticated individual....
>
> \* \* \* \* \* \*
>
> I feel strongly that one of the real bad things that we have going on in this country is the business of drugs. And I have said it—if I have said it once, I have said it several hundred times, that I think one thing that will bring this country to its knees could be this drug situation, if it gets out of hand and if it's not stopped. Now why do I say that? I say that because one of the primary reasons in me doing what I am going to do with you in this case is that it may have some effect on somebody else. And still, the

one big purpose that the Court has in sentencing, if not the biggest purpose, is deterrence. In many ways you have probably suffered enough. I am not saying you have; but in many ways you may have. The only way that the Court feels that it can send a message to the community is through, hopefully, others seeing what has happened to you or other people that the court sentences.

Disposition Hearing at 5–8.

Appellant asserts that the presentence report contained a gross exaggeration of the street value of the marijuana.[1] Appellant also alleges that the district court clearly relied on the high value of the marijuana given in the presentence report when he stated that, because of the monetary value involved, the defendant appeared to be sophisticated and that he should be made an example to deter others—presumably other sophisticated drug dealers.

Appellant raises two arguments on appeal: first, that the district court failed to assure him access to his presentence report and an opportunity to dispute material factual inaccuracies contained in the report, and, second, that he was denied effective assistance of counsel during sentencing. Because we vacate the sentence and remand for new sentencing based on the district court's failure to assure the defendant access to his presentence report at a reasonable time before the sentencing hearing, we do not reach appellant's second argument concerning ineffective assistance of counsel.

## II

Convicted defendants, including those who plead guilty, have a due process right to a fair sentencing procedure which includes the right to be sentenced on the basis of accurate information. *United States v. Tucker*, 404 U.S. 443, 447, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972); *Townsend v. Burke*, 334 U.S. 736, 741, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690; *United States ex rel. Welch v. Lane*, 738 F.2d 863 at 864–865 (7th Cir.1984). A sentence must be set aside where the defendant can demonstrate that false information formed part of the basis for the sentence. The defendant must show, first, that the information before the sentencing court was false, and, second, that the court relied on the false information in passing sentence. *United States v. Harris*, 558 F.2d 366, 375 (7th Cir.1977).

Several provisions of Rule 32(c) of the Federal Rules of Criminal Procedure are intended to protect that due process right by ensuring that the sentence is fair and based on accurate information. Changes amending this rule with respect to presentence investigations became effective August 1, 1983. Three of the amended subsections clarify considerably the role of the sentencing judge in assuring that the defendant and defense counsel have a meaningful opportunity to review the presentence report and to contest alleged factual inaccuracies. These sections read as follows:

(a) Sentence.

(1) Imposition of Sentence. Sentence shall be imposed without unreasonable delay. Before imposing sentence the court shall

> (A) determine that the defendant and his counsel have had the opportunity to read and discuss the presentence investigation report ...;

\* \* \* \* \* \*

---

1. Appellant has submitted with his brief the affidavit of Richard Evans Schultes, Jeffrey Professor of Biology at Harvard University. This affidavit states that only approximately 2% of the total weight of the uprooted plants (1090 pounds) constituted "useable" marijuana. Therefore, even if one assumes that the defendant was responsible for all 856 plants seized and that the approximate street value of $1500 per pound (a point also disputed by the defendant) was correct, then the value of the marijuana seized was, in fact, according to the information in the affidavit, closer to $32,700, than to $1,600,000. The concept that the entire plant as pulled from the ground does not constitute saleable marijuana seems intuitively correct, although there obviously remain several factual disputes which the district court will be in a better position to evaluate than we.

(c) Presentence Investigation.

\* \* \* \* \* \*

(3) Disclosure.

(A) At a reasonable time before imposing sentence the court shall permit the defendant and his counsel to read the report of the presentence investigation .... The court shall afford the defendant and his counsel an opportunity to comment on the report and, in the discretion of the court, to introduce testimony or other information relating to any alleged factual inaccuracy contained in it.

\* \* \* \* \* \*

(D) If the comments of the defendant and his counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report or the summary of the report or part thereof, the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing. A written record of such findings and determinations shall be appended to and accompany any copy of the presentence investigation report thereafter made available to the Bureau of Prisons or the Parole Commission.

Before the 1983 amendments, the availability of presentence reports varied markedly among the different districts. The prior rules contained no equivalent to Rule 32(a)(1)(A) or 32(c)(3)(D), while 32(c)(3)(A) only required that the court permit the defendant or defense counsel to read the report upon request. In suggesting the 1983 changes, the Advisory Committee relied extensively on an empirical study by Fennell and Hall, *Due Process at Sentencing: An Empirical and Legal Analysis of the Disclosure of Presentence Reports in Federal Courts,* 93 Harv.L.Rev. 1613 (1980). This study found that the extent and nature of disclosure of these reports were not only inconsistent among the district courts but also too often insufficient

to ensure accuracy of sentencing information.

Amended subsection (a)(1)(A) requires that the sentencing court "determine that the defendant and his counsel have had the opportunity to read and discuss the ... report." The Notes by the Advisory Committee state that this subsection now imposes "upon the sentencing court the additional obligation of determining that the defendant and his counsel have had an opportunity to read the presentence investigation report .... This change is consistent with the amendment of subdivision (c)(3) ... providing for disclosure of the report ... to *both* defendant *and* his counsel *without request*" (emphasis in original). The Fennell and Hall study concluded that the extent of disclosure under the prior rule was often inadequate and "that some form of judicial prodding is necessary to achieve full disclosure." *Id.* at 1651. The specific mention in the amended rule of both the "defendant *and* his counsel" was thus deliberate and the amended subsection, for the first time, imposes the affirmative obligation on the sentencing judge to determine whether the defendant, *in addition to counsel,* has read the report and whether they have reviewed the report together.

Amended Rule 32(c)(3)(A) involves three principal changes from the prior rule: disclosure of the report is not limited to those situations in which a request is made; disclosure is provided to *both* the defendant and defense counsel; and disclosure is required a reasonable time before sentencing. In order to promote accuracy in the presentence report under the amended rules, the *defendant* is to be permitted to review the report and to contest erroneous information. To accomplish this purpose, the report must be disclosed sufficiently before sentencing to permit assertion and resolution of claims of inaccuracy and to permit the defendant to make submissions of additional information and to make informed comments on the report.

The Notes thus emphasize the role of the defendant, in contrast even with that of counsel, in reviewing the report so as to "significantly reduce[ ] the likelihood that false statements will [not] be discovered, as much of the content of the presentence report will ordinarily be outside the knowledge of counsel." Subsection (c)(3)(D), which is an entirely new provision concerning the district court's obligation to make findings regarding contested facts if they are relied on in sentencing, can only be rendered truly meaningful if amended subsection (c)(3)(A) is given full effect.

■ The record in the present case as to the extent of disclosure of the presentence report is unclear, and one of the primary purposes of the amended rule, particularly subsection (a)(1)(A), is to require the court to establish a clear record on this issue. Defense counsel had access to the report at some time before the sentencing hearing, although it is unclear exactly when before the hearing the report was available. The record does not show, and the defendant now denies, that he had access to the report before the hearing. It is precisely for this reason that the amended rules specifically place upon the sentencing judge the responsibility of ascertaining whether the defendant had the opportunity to read the report and of establishing a record on this issue.[2] The requirements of the rule were thus not satisfied by the procedures followed in this case.

The government asserts that, even if the defendant did not see the report before the hearing, his counsel's oral statements *during* the hearing were sufficient to alert him to the portions of the report which he now claims were inaccurate. Listening to parts of the report recited during the hearing is not enough. The rule specifically requires that the defendant *and* defense counsel *shall* be permitted to *read* the report *at a reasonable time before* the imposition of sentence. This requirement of the rule was simply not satisfied.

The Notes make clear that merely making the presentence report available upon request, as did many district courts before

2. The dissent relies upon defense counsel's use of the term "we" during the sentencing hearing to establish that the defense counsel at least discussed the report with the defendant. The defendant, however, was incarcerated up to the day of sentencing, and his attorney apparently never visited him during that time. The use of the first person plural pronoun is not persuasive because attorneys often use the word loosely for various reasons. Further, as the dissent notes, defense counsel's statement, at the most, only suggests that he *discussed* the report with the defendant. Again, this is not all that the rule requires; rather, it requires that the defendant be given a reasonable opportunity to *read* the report and that the sentencing judge determine whether the rule has been complied with.

Our comments concerning the availability of the report are based on the appellant's brief and statements at oral argument as well as the appellee's description at oral argument of the usual procedures followed (at least at that time) for presentence reports. The government has not attempted to refute or deny appellant's assertions about the availability of the report, other than through its reliance on defense counsel's use of the word "we" at the sentencing hearing. Neither has the government refuted or denied appellant's explanation of the manner in which the government calculated the total street value of the marijuana involved. It is precisely because there are so many factual disputes, involving issues which amended Rule 32 requires be clearly established in the record, that a remand is required.

We note that if the defense counsel was given an adequate opportunity to review the report but did not contest the report's apparent inaccuracies, his performance might appear to fall below the minimum standards of professional competence. On the other hand, if counsel used the term "we" misleadingly so as to effect a waiver of his client's rights (as the dissent implies), when he had not in fact discussed the report with his client, such a misrepresentation would also cast doubt on counsel's competence. The Supreme Court, in *Strickland v. Washington*, —— U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), recently articulated the analysis to be applied to determine ineffective assistance of counsel. Judged under that standard, appellant's allegations seem to support a belief that defense counsel's apparent incompetence affected the outcome in the present case. These allegations might thus seem to warrant at least a remand for a hearing on the issue whether appellant's sixth amendment right to effective assistance of counsel has been violated. However, in light of our remand for resentencing solely on the basis of the procedures followed under Rule 32, we do not remand for consideration of the ineffectiveness of counsel issue. Neither do we attempt to decide that issue.

the amendments were enacted, is not adequate. Instead, the amended rule was intended to give the defendant a more clearly defined opportunity to read the report. The recognition that many of the facts included in the report are within the exclusive knowledge of the defendant—and not that of the defense counsel—led to the formulation of amended subsection (a)(1), which imposes on the district court an affirmative duty to ensure that the defendant has had an opportunity to read the report a reasonable time before the hearing is held. As with other rights which are personal to the defendant, the defendant would, of course, be able to waive this right to read the report. Such a waiver, however, must be clear and unequivocal.

The defendant claims on appeal that the total value of the marijuana seized, as presented in the presentence report, was grossly overvalued, *see supra* n. 1. This error was primarily the result of the fact that the report figures are based not merely on the weight of the useable parts of the marijuana plant but on the weight of the entire plant, including roots, stems and dirt. We cannot, without the benefit of an evidentiary hearing, determine the correct value of the marijuana seized. The defendant, however, has met the burden, which would have been imposed even under the old rules and our precedent in *United States v. Harris*, of raising grave doubt about the reliability and accuracy of the value given in the presentence report.[3] In

addition, the sentencing judge's comments make it clear that he was relying on the high value of the marijuana in determining the type of sentence which he was imposing.

 In the interest both of establishing a clear record and of carrying out the terms and intent of the amendments, therefore, the rules require a definite yet simple procedure. The district court at the sentencing hearing need directly ask the defendant only three questions—whether he or she has had an opportunity to read the report, whether the defendant and defense counsel have discussed the report and whether the defendant wishes to challenge any facts in the report. This brief questioning of the defendant would be somewhat analogous to the questioning of a defendant by the court upon entry of a guilty plea, although the sentencing situation is much simpler and the extent of questioning would be much more limited. The rules require only that the court make a record during the sentencing hearing, which reflects that the defendant has had a realistic opportunity to read and discuss the report and to raise objections.

By placing the responsibility on the court, the amended rule should clarify the record, particularly in a case like this in which the defendant was unable to make bond and was held in custody throughout the time when the report would usually have been available. Appellant's serious

---

**3.** The dissent impliedly criticizes the appellant for not having raised his allegations in the sentencing court under Fed.R.Crim.P. 35. In *Harris*, 558 F.2d at 375–76, the appellant also had not challenged the inaccuracies in his presentence report until his appeal and had apparently brought no Rule 35 motion. Nevertheless, as we stated in *Harris*, "several considerations persuade us that, under the circumstances of this case, justice would not be disserved if defendant is simply afforded the opportunity to deny and rebut the allegations ... in the presentence report." *Id.* at 375. The primary consideration which led to this conclusion was appellant's contention, admittedly without factual support in the record, that his trial counsel had apparently neglected to examine the presentence report. *Id.* at 376. A defendant may thus raise on direct appeal the possibility that the sentence

was based on information of highly questionable reliability. The appropriate remedy is ordinarily, as here, a remand for further factual inquiry and resentencing, at least in a situation in which the defendant has not knowingly and voluntarily waived his right to challenge the report. There is no requirement of a separate Rule 35 motion. *See id.* at 375–76 (direct appeal); *United States v. Weston*, 448 F.2d 626, 631–34 (9th Cir.1971) (direct appeal; no indication that Rule 35 motion was filed), *cert. denied*, 404 U.S. 1061, 92 S.Ct. 748, 30 L.Ed.2d 749 (1972). However, waiver under the prior rules, as in *Harris*, is not the issue in this case. Rather, the amended rules require the sentencing judge to make a record precisely so as to spare a reviewing court from disputes concerning the record such as the one which now divides this panel.

allegations concerning the effectiveness of his counsel further illustrate the necessity of having the district court question the defendant directly rather than relying on the assertions of defense counsel as to the accuracy of the report. Uncertainty about the practical availability of the report to the defendant, such as is present here, would be eliminated by requiring the district court to question the defendant personally. If the defendant has not been permitted to read the report (whether because of practical difficulties arising from routine procedures followed by the relevant officials or for other reasons) and has not waived the right to do so, the court should ensure that the defendant had an opportunity to review it. To make the report available in a nominal sense but to deny the defendant (who may not even know of the report's existence) a real opportunity to see it is to defeat the purpose of the amended rule as effectively as if disclosure were denied after a request had been made.

Once the court ascertains that the defendant has had an opportunity to read the report a reasonable time before the sentencing hearing, the court must then merely ask the defendant and defense counsel whether there are any contested statements of fact. In this way, the record will be clear as to when there are allegations of factual inaccuracies and when the requirements of Rule 32(c)(3)(D) have been triggered. The fundamental changes brought about by the amended rules and by the procedures adopted here thus relate to the emphasis to be placed on the defendant's opportunity (in addition to that of counsel) to read the report before the hearing. That opportunity is, in turn, closely related to the sentencing court's obligations under Rule 32(c)(3)(D).

During the sentencing hearing here, defense counsel clearly disputed the number of patches for which the defendant was responsible and, on that sole basis, the value of the marijuana at stake. Once that allegation of factual inaccuracy in the report was made, the requirements of Rule 32(c)(3)(D) were triggered, and the sentencing judge was obligated to make a finding

as to the allegation or determine that the finding was not necessary because the controverted matter would not be relied upon in sentencing.

The district judge, in this case, clearly did not state that the number of patches for which the defendant was responsible would not be relied on, and he therefore did not comply with 32(c)(3)(D)(ii). On the other hand, it is unclear whether the judge made a finding as to the truthfulness of the allegedly inaccurate statement. The fact that the judge relied on the amount of marijuana seized as given in the presentence report may imply that he rejected the defense counsel's contention. However, an implication which we must draw by reading between the lines scarcely seems to comport with the rule's requirement that the court squarely address the factual dispute. Our remand is thus also based on the district court's failure to comply with Rule 32(c)(3)(D), as well as on its failure to comply with Rule 32(a)(1)(A).

The defendant's allegations of inaccuracy concerning the weight and value of the marijuana seized, which in all likelihood would have been timely made if the defendant had had a reasonable opportunity to read the report, would have triggered the requirements of Rule 32(c)(3)(D). Clearly, no finding was made as to the weight or street value of the marijuana seized. The report's estimate of more than $1,600,000 compared with the estimate of a little over $30,000, based on an intuitive understanding of the facts of the case and on information in the affidavit, reveals a wide, and apparently significant, discrepancy. It is the sentencing judge's reliance on precisely this sort of important yet disputed information, without there being a finding as to its reliability, which the amended rules were intended to prevent. By following the procedures outlined in the amended rules as interpreted by this opinion, a sentencing judge will be able to eliminate gross errors and thus ensure greater accuracy and fairness in the sentencing process.

The amended rule, as the dissent notes, was admittedly intended to apply to the situation in which the report refers to criminal activity for which the defendant was never convicted. The rule, however, is also intended to apply to the type of information disputed in this case and to other situations in which the government might have been careless with the facts and thus significantly exaggerated the extent and nature of the defendant's culpability. Particularly in this case, where the defendant has absolutely no prior criminal record and admitted during the sentencing hearing that he has no familiarity with the technical aspects of the legal system (Disposition Hearing at 4), the amended rules and the purposes which inspired them should be given full scope, and their specific prescriptions should be followed.

The sentence is therefore vacated and the matter is remanded to the district court with instructions to resentence the defendant.

GEORGE CLIFTON EDWARDS, Jr., Circuit Judge, concurring specially.

I concur in Judge Cudahy's opinion remanding this case for a rehearing on sentence. I believe that the new amendments governing the hearing on sentence should be interpreted as requiring the District Judge to address the Defendant personally and thus learn from him that he has had time to read and understand the report. The rehearing may, of course, shed no new light and may cause no change in the sentence. But it is clear to me that the 1983 changes (See Rule 32(c)(3)(A)) mandate our remand for the reasons ably outlined in Judge Cudahy's opinion.

In my opinion the opportunity for the subject of the sentencing hearing to be addressed personally by the judge and have any relevant dispute of fact resolved through testimony, if within the trial judge's discretion it is found necessary, will strengthen the appearance and the reality

of fairness. It may send the person sentenced to the appointed place of confinement somewhat less resentful and more subject to rehabilitation than he would be otherwise.

ESCHBACH, Circuit Judge, dissenting.

The majority holds that this case must be remanded to the district court for resentencing. In doing so, it concludes that the district court erred in neither assuring the defendant access to his presentence report nor making specific findings about the exact number of marijuana fields for which the defendant was to be held responsible. The majority also concludes that the defendant has met his burden of establishing that the district court relied on materially false information in imposing sentence. *United States v. Harris,* 558 F.2d 366 (7th Cir.1977).

In so holding, the majority relies primarily on the defendant's unsubstantiated allegations, made for the first time in this court. While it is undisputed that the defendant's attorney read the report, the defendant claims that he never saw the report and that his attorney never visited him during the interim period between the entry of his guilty plea and the sentencing hearing. Further, the majority suggests—with no apparent basis in the record [1]—that the report was not available at least a reasonable time before sentencing.

No attempt was made to present any of these allegations to the sentencing court in the first instance under Fed.R.Crim.P. 35. *See United States v. Papajohn,* 701 F.2d 760 (8th Cir.1983); *United States v. Madonna,* 582 F.2d 704, 705 (2d Cir.1978), *cert. denied,* 439 U.S. 1069, 99 S.Ct. 838, 59 L.Ed.2d 34 (1979). Had the defendant done so, we would be able to review his claims on the basis of more than speculation. What can be said on the basis of the record, however, is the following. Defense counsel, who was representing only one defendant, stated:

---

**1.** The only possible explanation in the record for the majority's statement is that the report is dated four days before the sentencing hearing

was held. Whether this was reasonable or not under the circumstances is a factual determination that we are not competent to make.

In reference to the pre-sentencing report, *we* have only one point of clarification .... Anything else in the pre-sentencing report ... *we* agree with fully and completely.

(Emphasis added.) The majority interprets counsel's use of the plural as either an indication that he intended misleadingly to effect a waiver of his client's rights or as evidence of counsel's incompetence. I believe that counsel's representations are equally—and more plausibly—susceptible to the interpretation that counsel and the defendant had reviewed the report. Indeed, counsel's statements make no sense unless he had at least discussed the report with his client, since most of the report was concerned with the defendant's family situation and the circumstances of his arrest.[2]

Moreover, as the majority points out, the only dispute the defendant now raises with the facts contained in the presentence report which he did not also raise before the sentencing court is his contention that the government overvalued the market price of the marijuana. In support of its remand, the majority relies on the rationale behind amended Rule 32:

> The [Advisory Committee] Notes thus emphasize the role of the defendant, in contrast even with that of counsel, in reviewing the report so as to "significantly reduce [ ] the likelihood that false statements will [not] be discovered, as much of the content of the presentence report will ordinarily be outside the knowledge of counsel."

*Ante* at 1173. As the Advisory Committee Notes also make clear, the reason for mandating that the defendant be given an opportunity to view the report is that the report is likely to contain historical facts, the truth of which only the defendant could dispute. For instance, many presentence reports contain allegations that the defendant has been involved in other criminal activity for which he has not been convicted. Defense counsel could not know

whether these allegations are true or not; such information is peculiarly within the knowledge of the defendant.

Rone's challenge to the valuation of the marijuana is not based on any claimed expertise on his part in valuing narcotics. On the contrary, he relies in this court on the affidavit of a Harvard professor of biology to contest that valuation. *See ante* at 1171. This evidence was not presented to the court below, nor did the defendant dispute the value assigned to the marijuana below, although he was present when his attorney, in open court, repeated the valuation given in the report and the government attorney stated his lesser estimation based on the marijuana for which Rone actually claimed responsibility. *See Disposition Hearing,* 3–5.

Perhaps a simple inquiry, such as the one the majority now requires, would assure that a record is developed demonstrating compliance with Rule 32. But on the record before us, where there is no clear indication of noncompliance with the disclosure provisions of the rule, I cannot agree with the majority's holding that the district court erred in this regard.

I also cannot agree with the majority's holding that the defendant has met his burden of establishing that the district court relied on materially false information in making its sentencing decision. *United States v. Harris,* 558 F.2d 366, 375 (7th Cir.1977). Relying on the aforementioned affidavit submitted in this court, the defendant claims that only two percent of the marijuana plant is valuable (a contention which the majority finds "intuitively correct"). The majority accepts the defendant's claim that "the report figures are based not merely on the weight of the useable parts of the marijuana plant but on the weight of the entire plant, including roots, stems, and dirt." *Ante* at 1174. There is simply no evidence that the report figures were derived in the manner suggested by the majority: the report itself

---

**2.** If this is not the case, then defendant's silence in the face of his attorney's representations is inexplicable, especially in light of the fact that

after his attorney concluded his remarks, defendant himself addressed the court.

merely states that subsequent to defendant's arrest, "856 Sinsemillia cannabis plants weighing approximately 1090 pounds with a street value of $1,646,000 ... were seized." Moreover, I do not believe that the district court's reliance on the figures in the report has been shown. While stating that "it looks like [the value] was in the neighborhood of maybe a million dollars," the judge also noted, "I suppose to some extent it's anybody's speculation as to the total amount that would have been realized had it gone on the street...." *Disposition Hearing*, 5–6.

What is manifestly clear from the district court judge's sentencing comments is that he relied on his concern for deterring other potential drug growers and the "substantial amount" of marijuana seized. The majority holds that the judge erred again in failing to make findings about the number of marijuana fields for which he was holding defendant responsible. A reading of the remarks at sentencing shows that the judge, noting that defendant was arrested in the fields for which he claimed responsibility, and that those fields were in the same area as the other fields, expressly discredited defendant's denial of more extensive involvement:

> I think it would have meant more to the Court if you had made a complete [sic] breast of everything. Now you may say you have and you may have. You just haven't convinced the Court.

*Disposition Hearing*, 6–7. I do not believe, as does the majority, that we need "read[ ] between the lines" to find that the district court judge rejected defendant's contention.

For the reasons expressed above, I cannot join the majority opinion. I respectfully dissent.