**UNITED STATES of America, Plaintiff,**

v.

**Ronald ZILBERBRAND, et al., Defendants.**

**No. 85C0028.**

United States District Court, N.D. Illinois, E.D.

Jan. 15, 1985.

---

See also, D.C., 586 F.Supp. 825.

John L. Sullivan, Asst. U.S. Atty., Chicago, Ill., for plaintiff.

Ronald Zilberbrand, pro se.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Ronald Zilberbrand ("Zilberbrand") has moved pro se under 28 U.S.C. § 2255 ("Section 2255") to set aside the sentence of this Court imposed September 5, 1984 in Case No. 83 CR 764, on the asserted ground that (quoted verbatim):

> The court failed to advise me of my right to *see* and *challenge* my P.S.I. report prior to sentencing as an issue of fudemental fairness.

For the reasons stated in this memorandum opinion and order, this Court finds "the motion and the files and records of the case [1] conclusively show that the prisoner is entitled to no relief" (Section 2255). It therefore summarily dismisses the motion in accordance with Rule 4(b) following Section 2255.

Even before the 1983 amendment to Fed. R.Crim.P. 32 (and a fortiori before our Court of Appeals' decision in *United States v. Rone,* 743 F.2d 1169 (7th Cir.1984)), this Court uniformly acted to assure, in every criminal case on its calendar in which a defendant had either pleaded or had been found guilty, that both defendant and his or her counsel were advised of and had the full opportunity to read and comment on the presentence investigation report (the "Report") before sentencing. Its unvarying procedure involved three steps:

1. At the time the guilty plea was taken or immediately following a verdict of guilty, this Court followed the procedure outlined, and the locution employed, in Federal Judicial Center Bench Book § 1.06.I (pages 1.06–15 and 1.06–16 of the May 1983 revision). It explained the function and importance of the Report to defendant, asked whether either defendant's counsel or defendant saw any reason for not ordering a Report, and specifically informed defendant that he or she and his or her counsel had a right and would have an opportunity to examine the Report and comment on it at the time of sentencing.

2. Immediately after the completed Report was actually received in chambers, counsel for the United States and counsel for defendant were advised of its receipt and reminded that both they and defendant should read the Report in advance of sentencing.

3. At the time of sentencing, this Court once again called the attention of defendant and his or her counsel to their right to have read the Report and their specific right to comment on it during the lawyer's statement and during the defendant's exercise of his right of allocution before sentencing.

That procedure was in fact followed in Zilberbrand's case. At the conclusion of its taking his change of plea July 9, 1984, this Court's oral statement specifically referred

---

**1.** This Court has listened to the tape transcriptions of the guilty plea and sentencing proceed- ings.

to the presentence investigation report procedure and to the fact that such a report was always obtained except in "extraordinary" circumstances. It referred particularly to the importance of such a report in the sentencing decision. In response to this Court's inquiry, both counsel and Zilberbrand said there was no reason not to order such a report. This Court then ordered one and stated that, though Zilberbrand would want to confer with his lawyer on the subject, this Court's own view was that Zilberbrand's cooperation with the probation officer in furnishing information for the Report was important to provide the maximum possible input for this Court's decision in sentencing. This Court said specifically (its use of the plural was occasioned by the fact that Zilberbrand and two co-defendants were pleading guilty simultaneously):

> As soon as it's ready we'll let your lawyers know. Each of you will have a right and an opportunity to look at the report and then comment on it at the time of sentencing.

When the report was completed and a copy was received in this Court's chambers, Zilberbrand's counsel was so advised (as was the Assistant United States Attorney). Zilberbrand's lawyer was specifically asked to make arrangements for his own reading and that of his client before the sentencing.

At the time of sentencing this Court began the proceedings by referring to the earlier taking of guilty pleas, then said:

> Since that time the Court has had the benefit of what is always from our Probation Office a comprehensive report giving full backgrounds on each of you. It's a report that each of you as well as your respective lawyers has had the opportunity to review. And each of you has the opportunity at this time—you and your lawyers—to address the Court personally, to make any kind of statement that you might want to make, present any added information that you

might want to present, either in mitigation of punishment, or regarding the presentence investigation report itself, or that you consider in any way relevant regarding what kind of a sentence ought to be imposed—what would be fair under all the circumstances.

Each of defendants and their respective counsel then proceeded as this Court had requested.

When it came time for Zilberbrand and his lawyer to address this Court, his lawyer (Stuart Goldberg, Esq., "Goldberg") first exercised on Zilberbrand's behalf the right to call several witnesses. Then Goldberg (this Court had made clear, as it always does, it was up to Zilberbrand and his lawyer to decide which of them should speak first) included in his statement his response to this Court's specific request to address matters in the Report: see Tr. 22 ("a very thorough probation report"), 24 (referring to the Report's saying it was a shame Zilberbrand had viewed the drug deal as a "business transaction," "and I agree and Mr. Zilberbrand agrees") and 25 (citing and quoting from the Report). When Zilberbrand exercised his right of allocution, he made a brief statement (Tr. 30) in which he did not advert to the Report—but that was *not* for lack of having been informed about his right to do so, or for lack of opportunity to do so.

Like all District Judges, this Court lacks a crystal ball to divine what our Court of Appeals may say in the future.[2] Since *Rone* was handed down, this Court has altered its *language* somewhat to conform to the specific three-question procedure set out in 743 F.2d at 1174. But as the foregoing recital reflects, it has *always* provided a defendant the *substance* of what *Rone* dictates. As *Rone* itself said (*id.*):

> The rules require only that the court make a record during the sentencing hearing, which reflects that the defendant has had a realistic opportunity to

**2.** *Rone* was decided the day before Zilberbrand's sentencing, but the slip opinion had not yet been distributed to this Court.

552

read and discuss the report and to raise objections.

This Court has always done exactly that, and it do so in Zilberbrand's case. Under the circumstances involved here, this Court agrees with the portion of its colleague Judge Bua's decision in *United States v. Johnson*, No. 84 C 1066, slip op. (N.D.Ill. Jan. 7, 1985) that holds no magic incantation is required to satisfy Section 2255.

There is no way in which this Court's procedure in this case can be characterized—as Zilberbrand claims—as having "failed to advise [Zilberbrand] of [his] right to see and challenge [his] P.S.I. report prior to sentencing as an issue of fundamental fairness." As Rule 4(b) following Section 2255 puts it:

> It plainly appears from the face of the motion ... and the prior proceedings in the case that the movant is not entitled to relief in the district court....

This action is dismissed summarily.[3]

---

**3.** Because Zilberbrand's motion is not sustainable in any event, this Court has not dealt with any of the other legal grounds that might compel the same result (such as the absence of any showing of prejudice to Zilberbrand, see *Johnson,* slip op. at 6–7, and the possibility of waiver by failure to appeal, *id.* at 7–9).