UNITED STATES of America,
Plaintiff-Appellee,

v.

Paul W. MISCHLER, Carol L. Mischler,
Defendants-Appellants.

No. 85–2213.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 5, 1985.

Decided March 27, 1986.

Robert E. Owens, Cincinnati, Ohio, for defendants-appellants.

Paula E. Lopossa, Asst. U.S. Atty., John Daniel Tinder, U.S. Atty., Indianapolis, Ind., for plaintiff-appellee.

Before CUDAHY and RIPPLE, Circuit Judges, and WILL, Senior District Judge.[*]

RIPPLE, Circuit Judge.

■ Appellants Paul W. and Carol L. Mischler (the Mischlers) contended, in a *pro se* action in the district court,[1] that the imposition of restitution as part of their sentences breached their plea agreement. The district court denied relief. While we see no merit to the contention that the plea agreement was breached, the district court did not properly ascertain the amount of restitution which could be imposed. We also note that Mr. Mischler was sentenced under an inapplicable statute.[2] Therefore, we reverse and remand to the district court for resentencing.

---

[*] The Honorable Hubert L. Will, Senior District Judge for the Northern District of Illinois, is sitting by designation.

[1.] Application for writ of error *coram nobis* is authorized by 28 U.S.C. § 1651 (1981)—the all writs provision of the Judicial Code. While the writ was abolished in 1946 by the amendment of Fed.R.Civ.P. 60(b), it retains its vitality in criminal proceedings. *United States v. Morgan,* 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954). Today, *coram nobis* is available to challenge errors "of the most fundamental character," such that the proceeding itself is invalid. *Id.* at 512, 74 S.Ct. at 253; *see United States v. Mayer,* 235 U.S. 55, 35 S.Ct. 16, 59 L.Ed. 129 (1914). We believe that the fundamental unfairness of the district court in not considering the accuracy of the Blue Cross Blue Shield audit upon which the restitution order was based warrants *coram nobis* consideration. We are aware that Paul Mischler could have sought instead to have his sentence vacated pursuant to 28 U.S.C. § 2255 (permitting relief for petitioner who is "in custody"). However, we are mindful of the *Morgan* Court's *caveat* that, "[i]n behalf of the unfortunates, federal courts should act in doing justice if the record makes plain a right to relief." 346 U.S. at 505, 74 S.Ct. at 249. In making this determination, we note that Mrs. Mischler's only avenue of relief was *coram nobis.* The couple's petition for relief was filed jointly and was filed *pro se.* Therefore, recognizing the liberality with which *pro se* filings

must be construed, we consider the Mischlers' petition for *coram nobis* relief to be proper.

[2.] We note that Paul Mischler was sentenced under the Victim Witness Protection Act (VWPA), 18 U.S.C. § 3579 (1985), which is effective only with respect to offenses occurring after January 1, 1983. Pub.L. 97–291, § 9(b)(2), *reprinted in* 1982 U.S.Code Cong. and Ad.News, p. 2515. Mr. Mischler was convicted of offenses spanning, at least, the years 1978 through February 9, 1984. The remaining counts of the indictment, however, charge only substantive acts occurring before January 1, 1983, the effective date of the VWPA. The government conceded at the change of plea hearing that Mr. Mischler could not be sentenced under this provision. The following exchange between the district judge and counsel for the government is enlightening:

> THE COURT: But the government is convinced that the case does not come under the victim's reimbursement provisions of the [Victim Witness Protection] Act?
>
> MISS LOPOSSA: Yes, your Honor, the subsequent acts charged in the indictment occurred before January 1, 1983. However, as the Court knows, under Title 18 United States Code, section 3651 [the split sentencing provision], which is the section that the government's recommendation is that Mr. Mischler be sentenced under, the Court can order restitution....

Change of Plea Hearing Tr. 33–34. This exchange makes clear that the government under-

I

On June 20, 1984, the Mischlers were indicted on thirteen counts of making false statements to the Department of Health and Human Services (HHS) in violation of 18 U.S.C. § 1001 and one count of conspiring with their corporation, Vincennes Ambulance Service, Inc. (Vincennes), to make false statements to HHS in violation of 18 U.S.C. § 371. These indictments stemmed from the Mischlers' operation of Vincennes and two subsidiary ambulance services in the city of Vincennes, Indiana. These services provided emergency medical transportation to and from medical treatment facilities. The Mischlers arranged for their Medicare patients to assign their reimbursement claims to Vincennes. They then forwarded the claims to Blue Shield of Indiana for reimbursement. Blue Shield was authorized by HHS to administer Part B of the Social Security Act which provides for emergency medical transportation under certain limited conditions.

The Mischlers represented to Blue Shield that the patients they were transporting were stretcher patients who qualified for Medicare reimbursement. Actually, the patients were ambulatory. Transport of wheelchair patients was not a Medicare-covered expense. The indictment also charged that the Mischlers inflated the actual mileage to and from the health care facilities thereby increasing the amounts for which they were reimbursed. In response to complaints by company employees about these practices, an HHS investigation was begun. As a result of the investigation, on June 20, 1984, indictments were issued. At the July 5, 1984 arraignment, the Mischlers entered pleas of not guilty, and an August trial date was set. The trial date was later continued to September 11, 1984. Following a July 17 discovery conference, all documentary evidence against the Mischlers—including the Blue Cross Blue Shield audit—was disclosed to the Mischlers. Over the course of the ensuing weeks, the parties engaged in plea negotiations. Although the issue of restitution was discussed in these negotiations, no agreement was reached.

On September 11, 1984, the Mischlers withdrew their pleas of not guilty and, in accordance with a Memorandum of Plea Negotiations and Plea Agreement entered into by the Mischlers and the government, pleaded guilty to the first count of the indictment. The Memorandum contained no agreement regarding restitution.[3] At

---

stood that sentencing under the VWPA was improper in this case.

While, in this action, Mr. Mischler has not challenged the legality of his sentence under the VWPA, this lapse in the sentencing process is plain error.

3. The plea agreement contained the following account of the negotiations on the matter of restitution:

1. By correspondence dated July 27, 1984, Paula E. Lopossa informed Forrest Bowman, Jr. that if his clients would be able to make restitution in a substantial amount the Government would, in exchange for Paul W. Mischler's plea of guilty to Count 1 of the Indictment, recommend an executed sentence at the disposition of this matter. The offer also included that if Carole [sic] L. Mischler would plead guilty to Count 1 of the Indictment, the Government would recommend that she be sentenced under the split sentencing provisions of Title 18, United States Code, Section 3651. The offer also included that the Defendants confess judgment to a civil complaint to cover the restitution aspects of the case.

2. On August 14, 1984, Paula E. Lopossa telephoned Forrest Bowman, Jr. to learn the response of the Defendants to the Government's offer of July 27, 1984. Mr. Bowman stated that he was consulting with his clients and would respond the following week.

3. On August 30, 1984, Mr. Bowman tentatively accepted the Government's offer with regard to the criminal aspects of the matter. The matter of restitution remained for negotiations. At that time, Mr. Bowman presented Paula E. Lopossa with a list of the real and personal property of the Defendants to aid in resolving the question of restitution.

4. On September 5, 1984, Paula E. Lopossa informed Forrest Bowman that the resolution of the matter of restitution depended upon action by the Civil Section of the Department of Justice in Washington, D.C. Since such action was not contemplated before the trial of this cause, Paula E. Lopossa informed Forrest Bowman that under the Victim-Witness Protection Act the Court could find that a hearing and order of restitution would unduly complicate and prolong the sentencing process and therefore no order regarding restitu-

this change of plea hearing, the Mischlers stated that they had entered into the agreement voluntarily and that they understood the agreement. Pursuant to the Plea Agreement, the thirteen remaining counts were dismissed.

In support of the Mischlers' pleas of guilty to the first count, the government introduced the 1983 Blue Cross Blue Shield audit. This audit was based on half of the claims filed between 1978 and 1980 and all claims filed in 1981 and 1982. It indicated that the Mischlers had received overpayments of $216,167.32 from the Department of Health and Human Services for Medicare-covered expenses during the years 1978 through 1982. The accuracy of this figure was contested by counsel for the Mischlers. After accepting the changes of pleas, the district judge referred the case to the United States Probation Office for a presentence investigation

and report for each defendant. The presentence reports for both Paul and Carol Mischler contained a copy of the Blue Cross Blue Shield audit. The reports suggested jail sentences and fines, but they neither recommended restitution nor recited an actual loss figure.

On October 23, 1984, the district judge sentenced the Mischlers. At the sentencing hearing, the Mischlers again objected to the actual loss figure stated in the Blue Cross Blue Shield audit. Paul Mischler was sentenced to serve a two year executed sentence and to pay $108,083.61 in restitution to Medicare pursuant to the provisions of 18 U.S.C. § 3579.[4] Carol Mischler was given a two year sentence. She was ordered to serve an executed sentence of ninety days, which was later modified to twenty-one days, and the balance on probation pursuant to the "split sentencing" provision of 18 U.S.C. § 3651.[5] Additionally,

---

tion was possible. Paula E. Lopossa suggested that the parties agree that such was the situation in this matter and informed the Court that the Department of Justice's Civil Section had in its possession the FBI Report regarding this matter and was contemplating a suit under the False Claims Act.
5. On September 6, 1984, Paula E. Lopossa informed Forrest Bowman that the effective date of the Victim-Witness Protection Act was January 1, 1983, and therefore an order of restitution under its provisions is not mandatory. Therefore, the parties agreed that no agreement as to restitution would occur.

The above numbered paragraphs set forth all of the plea negotiations in this case. The final plea agreement in this case is the following:
1. Paul W. Mischler will plead guilty to Count 1 of the Indictment.
2. The Government will dismiss Counts 2 through 14 of the Indictment and recommend an executed sentence.
3. Carole [sic] L. Mischler will plead guilty to Count 1 of the Indictment.
4. The Government will dismiss Counts 2 through 14 of the Indictment and recommend an executed sentencing under Title 18, United States Code, Section 3651.

4. Section 3579 provides in pertinent part:
(a)(1) The court, when sentencing a defendant convicted of an offense under this title . . . in addition to or in lieu of any other penalty authorized by law, [may require] that the defendant make restitution to any victim of the offense. . . .

(b) The order may require that such defendant—
(1) in the case of an offense resulting in damage to or loss or destruction of property of a victim of the offense—
 * * * * * *
(B) if return of the property under subparagraph (A) is impossible, impractical or inadequate, pay an amount equal to the greater of—
(i) the value of the property on the date of the damage, loss, or destruction, or
(ii) the value of the property on the date of sentencing,
less the value (as of the date the property is returned) of any part of the property that is returned. . . .
18 U.S.C. § 3579 (1985). As noted, *supra,* this section is only applicable to crimes committed after January 1, 1983.

5. Section 3651 provides, in pertinent part, that:
Upon entering a judgment of conviction of any offense not punishable by death or life imprisonment, if the maximum punishment provided for such offense is more than six months, any court having jurisdiction to try offenses against the United States, when satisfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby, may impose a sentence in excess of six months and provide that the defendant be confined in a jail-type institution or a treatment institution for a period not exceeding six months and that the execution of the remainder of the sentence be suspend-

she was required to make restitution in the amount of $108,083.61 within the period of probation. The Mischlers' objections to the imposition and amount of restitution imposed were raised in their petition for writ of error *coram nobis* filed on April 10, 1985. The district court's June 28, 1985 denial of that petition is the basis of this appeal.

## II

The issues on this appeal [6] are whether imposition of restitution was permissible in light of the language of the plea agreement and, if so, whether the amount imposed was permissible under the relevant statutes. We shall consider these questions in order.

### A. The Plea Agreement

■ The Mischlers' first argument is that the plea agreement expressly precluded imposition of restitution. Therefore, according to the Mischlers, imposition of restitution is a breach of the plea agreement and a violation of Fed.R.Crim.P. 11. Rule 11 provides that both the judge and the government are bound by the plea agreement entered into by the parties. Contravention of the terms of the agreement is impermissible. "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971).

■ We are not confronted with a situation comparable to *Santobello* here since there was no breach of the plea agreement. The Mischlers agreed to plead guilty to the first count of the indictment; the remaining thirteen counts would be dismissed. No agreement was made on the matter of restitution.[7] A fair reading of the plea agreement establishes that the question of restitution—and indeed all aspects of the sentencing process—were to be decided by the district judge.

### B. The Amount of Restitution

The Mischlers' next argument is that, if restitution were a permissible component of the sentence, the amount imposed must be limited to the amount recited in the count to which they each pled guilty.

The district judge ordered the Mischlers each to pay as restitution $108,083.61, half of the $216,167.32 figure recited in the Blue Cross Blue Shield audit as overpayments. However, count one of the indictment, to which the Mischlers pled guilty, recites no dollar amount. Instead, the indictment refers to the numbers of checks sent to the Mischlers as reimbursement for covered Medicare services. The total amount of the checks listed in count one is less than $2000. Moreover, nowhere in the indictment is there a statement of the total amount of loss caused by the Mischlers' fraudulent statements to Medicare.

■ Imposing restitution as part of a sentence is authorized under two distinct provisions—18 U.S.C. §§ 3651 and 3579. Section 3651 is the "split sentencing provision;" it authorizes imposition of restitution as a condition of probation.[8] Section

---

ed and the defendant placed on probation for such period and upon such terms and conditions as the court deems best.

> \* \* \* \* \* \*

While on probation and among the conditions thereof, the defendant ...

May be required to make restitution or reparation to aggrieved parties for actual damages or loss caused by the offense for which conviction was had....

18 U.S.C. § 3651 (1985).

**6.** *See supra* note 2.

**7.** Although restitution had been discussed by the parties, no agreement was reached. Instead, paragraph 5 of the plea agreement states that, "the parties agreed that no agreement as to restitution would occur." Evidently, the government decided not to seek restitution because it intended to institute suit against the Mischlers under the False Claims Act, 31 U.S.C. §§ 231–235, which provides for treble damages. We are informed that such a suit is currently pending.

**8.** See *supra* note 5 for text of the statute.

3579 is part of the Victim Witness Protection Act (VWPA or the Act).[9] The restitution provisions of the Act are effective only with respect to offenses committed after January 1, 1983. The VWPA does not supersede section 3651; rather, it complements the section.[10] Thus, restitution as a condition of probation still is governed by section 3651 while restitution as part of an executed sentence is available for offenses committed after January 1, 1983 under section 3579.[11] Under either statute, the district judge acts within his authority in assessing restitution in excess of the amount indicated by the count to which the guilty plea was entered. *See United States v. Davies*, 683 F.2d 1052, 1055 (7th Cir.1982); *United States v. Roberts*, 619 F.2d 1, 2 (7th Cir.1979). In *Davies*, we decided that it was permissible to "require restitution of any amount up to the entire illicit gain from such a scheme, even if only some specific incidents are the basis of the guilty plea." 683 F.2d at 1055. This rule recognizes the practicalities of plea negotiation in a complex criminal proceeding and harmonizes those realities with the purpose of restitution—to compensate the victim of the crime for actual loss and the desire to foster meaningful plea negotiations in multi-count indictment cases. *Id.* However, it has long been recognized that a convicted defendant is entitled to be sentenced "on the basis of accurate information." *United States v. Rone*, 743 F.2d 1169, 1171 (7th Cir.1984); *see United States v. Tucker*, 404 U.S. 443, 447, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972); *Townsend v. Burke*, 334 U.S. 736, 741, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948); *United States v. Harris*, 558 F.2d 366, 374 (7th Cir.1977). Therefore, *Davies* is not without its safeguards:

> [A] court acts within the limits of legislatively granted authority when it imposes restitution in the amount of actual damage and loss to the victim, even if

that exceeds the amount in the counts pleaded to, when (a) the defendant has obtained the proceeds as part of an ongoing scheme to defraud which extends over time, and (b) the amount of the damages to the victim has been established with specificity and admitted to by the defendant in the indictment, the plea agreement, and plea and presentence proceedings.

683 F.2d at 1054. In applying *Davies* to this case, we encounter considerable difficulty with the second prong of the test. The amount of loss was not determined or established with specificity nor were the defendants given ample opportunity to contest the figure.

While it is clear that restitution in excess of the amount recited in the count to which the plea was entered is permissible, it is equally clear that the amount of restitution must be definite and is limited by the victim's *actual loss. See United States v. Harris*, 761 F.2d 394, 404 (7th Cir.1985); *United States v. Lynch*, 699 F.2d 839, 845 (7th Cir.1982); *United States v. Hoffman*, 415 F.2d 14, 22–23 (7th Cir.), *cert. denied*, 396 U.S. 958, 90 S.Ct. 431, 24 L.Ed.2d 423 (1969). In *Harris*, we adopted the Ninth Circuit's determination that the amount of loss may be proved "by proof at trial, by judicial determination, or through the consent of the defendant." 761 F.2d at 404 (citing *United States v. Gering*, 716 F.2d 615 (9th Cir.1983)). In the district court's order of June 28, 1985 denying the Mischlers' motion for writ of *coram nobis*, the judge indicated that the $216,167.32 amount was derived from the Blue Cross Blue Shield audit. He also stated that the amount of actual damages caused by the Mischlers was established with specificity. Order Denying Writ of *Coram Nobis*, R. 140. Evidently, he was referring to the fact that the Mischlers had seen the presentence investigation and report which

**9.** See *supra* note 4 for text of the statute.

**10.** *See generally* Project, *Congress Opens a Pandora's Box—The Restitution Provisions of the Victim and Witness Protection Act of 1982*, 52 Fordham L.Rev. 507, 510–14 (1984).

**11.** The VWPA is not applicable to offenses occurring before January 1, 1983. *See supra* note 2.

246

contained a copy of the Blue Cross Blue Shield audit. However, the Mischlers have objected repeatedly to the amount recited in the Blue Cross Blue Shield audit. At the change of plea hearing, counsel for Carol Mischler stated that:

> [W]e do not necessarily agree with the figures stated with respect to total amounts involved, either by percentage or dollar figures. We have no quarrel with those parts of the factual basis that support the integrity of the plea. But by not challenging that, we want the Court to understand that we do not acquiesce in the dollar amounts presented here today. We do not feel that it is essential— that the specific accuracy of those are essential to the validity of the plea. We just want to make that qualification.

Change of Plea Hearing Tr. 33. Counsel for Paul Mischler added that they did not "necessarily accept the figures that are in the factual basis" either. *Id.* at 34. The government's attorney responded that the government had "no objection to that qualification being given to the factual basis." *Id.* at 33. Moreover, as counsel for the government conceded at oral argument, the Blue Cross Blue Shield audit was grossly inaccurate. Specifically, the government, suggesting that the Mischlers had been treated leniently, stated that only half of the claims for two of the five years covered by the audit had been checked. Further, the government admitted that the mileage overcharges detailed in the audit reflected the gross mileage figure rather than the net or actual overcharge figure. Accordingly, we are unable to say that the district judge relied on accurate information as required by *Davies.*

■ Furthermore, we are not persuaded that the Mischlers were afforded the protections of Fed.R.Crim.P. 32 at sentencing. Fed.R.Crim.P. 32(c)(3)(D) provides:

> If the comments of the defendant and his counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report or the summary of the report or part thereof, the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing. A written record of such findings and determinations shall be appended to and accompany any copy of the presentence investigation report thereafter made available to the Bureau of Prisons or the Parole Commission.

Rule 32(c)(3)(D) serves two purposes: it safeguards the defendant's "due process right to fair sentencing procedures, particularly the right to be sentenced on the basis of accurate information," and it ensures that a clear record of the resolution of disputed facts will be available to a reviewing court. *United States v. Eschweiler,* 782 F.2d 1385, 1387 (7th Cir. 1986). This court in *United States v. Rone,* 743 F.2d 1169 (7th Cir.1984), determined that a definite procedure was to be followed at sentencing to ensure compliance with the Rule. The district court must ask the defendant, "whether he or she has had an opportunity to read the report, whether the defendant and defense counsel have discussed the report and whether the defendant wishes to challenge any facts in the report." 743 F.2d at 1174. Once an allegation of factual inaccuracy is lodged, the requirements of the Rule are triggered, and the sentencing judge must "make a finding as to the allegation or determine that the finding was not necessary because the controverted matter would not be relied upon in sentencing." *Id.* at 1175.

There is no showing on the record that the requirements of *Rone* were met in this case. However, it is clear that counsel for the Mischlers consistently objected to the accuracy of the amount recited in the Blue Cross Blue Shield audit (which was included in the presentence investigation and report). The Mischlers, at no point, acquiesced in the $216,167.32 figure stated in the Blue Cross Blue Shield audit. That figure is not reflected in the indictment or

in the plea agreement. A copy of the audit was appended to the presentence investigation report which was admittedly read by the Mischlers. However, as the government conceded, at the sentencing hearing, the Mischlers both "reiterated their objection to the figure of $216,167.61 [sic]." Br. 6 (citing to Disposition Hearing Tr. 10, 19, 21).

No further inquiry was made by the district judge. Whether he made any finding as to the purportedly inaccurate information is unclear. The record reflects that the district judge simply stated that the amount was "reduced about as much as it could be reduced." *Id.* at 19. He added that he would hear from counsel. Counsel for Carol Mischler detailed for the court the Mischlers' objection to the amount of restitution:

Our concern is that the total sum of $206,000 [sic]—as I understand, the government's case is based upon the total sum of the claims made for which there was a defect. But it is my understanding that it is not the government's assertion that all of those claims should be rejected in total.

For example, a substantial number of the claims included to make up that figure carry the flaw of excess mileage. And some portion of those claims should be repaid.

But as I understand the way the government has constructed it, they have included the totality of the claims for which there was any defect at all and, therefore, the figure claimed is a correct statement—assuming the validity of the audit—is a correct statement of the claims with which they found some fault, but is not necessarily the amount that should be returned.

Now, that is the understanding I have, based upon the data I have seen from the government.

And I believe that was a point we covered at the time of the guilty plea.

And that is why we objected, and do, for the record, object to the $216,000 [sic] figure.

It is our position that it would require a more detailed analysis of the mileage claims, for example, to determine what part of that should be repaid and what part the Mischlers would be entitled to retain.

Disposition Hearing Tr. 19-20.

As we noted in *Rone*, "[i]t is the sentencing judge's reliance on precisely this sort of important yet disputed information, without there being a finding as to its reliability, which the amended rules were intended to prevent." 743 F.2d at 1175.[12]

 Our review of sentencing decisions is narrow—the determination of the sentencing court may be overturned only if we find that the district judge has abused his discretion. *Harris*, 761 F.2d at 404; *Davies*, 683 F.2d at 1054. Since we believe that the district judge did not rely on accurate information in sentencing the Mischlers, *Rone*, 743 F.2d at 1175-76, did not determine the amount of damages with certainty, *Roberts*, 619 F.2d at 2, and did not provide the Mischlers with adequate opportunity to be heard on the question of the amount of actual loss, *Rone*, 743 F.2d at 1175-76, we hold that he abused his discretion in imposing $216,167.32 in restitution as part of the Mischlers' sentences.

The sentences are vacated, and the matter is remanded to the district court for proceedings consistent with this opinion.

So Ordered.

12. While the Mischlers were able to file their petition for writ of error *coram nobis,* they were not granted a hearing on that petition at which the amount of actual loss could be determined.