UNITED STATES of America,
Plaintiff-Appellee,

v.

Beverly Ann PAUL,
Defendant-Appellant.

No. 85–1992.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 4, 1985.

Decided Feb. 6, 1986.

Geri A. Smith, Legal Asst. to Institutionalized Person Program, Madison, Wis., for defendant-appellant.

Grant C. Johnson, Asst. U.S. Atty., John R. Byrnes, U.S. Atty., Madison, Wis., for plaintiff-appellee.

Before FLAUM and RIPPLE, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

FLAUM, Circuit Judge.

Beverly Ann Paul was charged and pleaded guilty to two counts of embezzling funds from her employer, the Auburndale State Bank. She appeals to this court from the district court's modification of her sentence, a modification that transpired after Mrs. Paul had moved the district court to correct her sentence pursuant to Rule 35(a) of the Federal Rules of Criminal Procedure. For the reasons stated below, we affirm the sentence as modified but reduce the amount of restitution that Mrs. Paul is required to make.

I.

The information upon which Mrs. Paul was charged contained two counts. Count I alleged that Mrs. Paul had embezzled $15,500 from the bank on or about June 6, 1980, and Count II alleged embezzlement of $12,500 on or about January 12, 1983. At a hearing on November 15, 1983, the prosecutor and the judge informed Mrs. Paul that she could be "subjected to penalties up to and including" the "maximum possible penalty of a five thousand dollar fine and five-years' incarceration." Mrs. Paul entered a plea of guilty to both counts, pursuant to an oral plea agreement with the United States Attorney. The plea agreement provided that, in exchange for Mrs. Paul's guilty plea, the government would not charge her with any additional crimes arising from the embezzlement of the bank's funds.

Later in the same proceeding, the court raised the possibility that restitution would be required and asked the prosecutor about the amount of loss that the government would be prepared to prove. The prosecutor stated that the bank believed its losses to be "in excess or around $150,000" and that Mrs. Paul had admitted to taking approximately $100,000. The prosecutor concluded that "there will be some question at sentencing unless the parties can reach some agreement relating to the exact amount of the loss."

Mrs. Paul's attorney then interjected that Mrs. Paul had made an admission to the FBI agent that "she would admit responsibility for $118,000 shortage." The defense attorney continued, "I believe her position is, Your Honor, that that is absolutely the maximum.... [W]e would contest I believe any amount over 118."

At that point, the court informed Mrs. Paul that "in addition to a maximum sentence ... I can impose upon you the requirement that you make restitution up to the amount approved by the government." Asked whether she understood, Mrs. Paul replied affirmatively. The prosecutor then stated that if the case went to trial, the government would file a multi-count indictment that "would contain the entire amount of money which Mrs. Paul has admitted to date, which would be $118,000." The prosecutor indicated that the government's proof would rest upon Mrs. Paul's statement and auditors' reports. Mrs. Paul's attorney, in response to questioning by the court, replied that he would not dispute the prosecutor's sketch of what the government would be prepared to prove at trial, and Mrs. Paul indicated that she would not take issue with anything that had been said. The court concluded the proceeding by ordering a presentence investigation, setting a date for sentencing, and informing Mrs. Paul's attorney that if the defendant wanted to dispute "the amount that was actually taken," notice to the government would be required to en-sure the presence of witnesses at the hearing.

Mrs. Paul's attorney did not give notice before or during the January 10, 1984 sentencing hearing that Mrs. Paul disputed the presentence report's estimate of the bank's loss. According to the record, that loss was listed as $141,050 in the Victim Impact Statement filed with the court. At the sentencing hearing, the district court sentenced Mrs. Paul to eighteen months in prison on Count I, plus restitution in the amount of $141,050. On Count II, the court imposed a five-year term of probation, along with a $5,000 fine. The transcript of the sentencing hearing reveals that neither Mrs. Paul nor her attorney objected to the sentence or to the imposition of restitution in that amount.

In May, 1985, after Mrs. Paul had completed her term of imprisonment on Count I and had begun her probation period on Count II, she moved the district court pursuant to Rule 35(a) to correct an illegality in her sentence. Mrs. Paul claimed that under 18 U.S.C. § 3561, restitution could not be ordered on the same count on which a term of imprisonment was imposed. The district court agreed and corrected the sentence by removing the restitution order from Count I and placing it on Count II. Mrs. Paul now appeals from the modified sentence, claiming that the district court had authority under Rule 35(a) merely to excise the illegal component of the sentence (the restitution attached to Count I), and in the alternative that the restitution order of $141,050 is excessive because it was imposed on a count alleging embezzlement of only $12,500.

## II.

■ Addressing Mrs. Paul's first argument, we conclude that the district court was authorized to move the restitution order to Count II. Rule 35(a) provides that "[t]he court may correct an illegal sentence at any time." Since the parties agree that the sentence was illegal under 18 U.S.C. § 3561,[1] Mrs. Paul's argument concerns

1. Section 3561, which was in effect for viola-

tions occurring before January 1, 1983, permit-

the scope of the power given the district court to correct the illegality. Citing *United States v. Henry*, 709 F.2d 298 (5th Cir. 1983), Mrs. Paul argues that Rule 35(a) empowers the district court only to "correct," in other words, excise, the illegal component of the sentence, and does not authorize a modification of any other portion of the sentence. This theory rests on a reading of the word "sentence" as the specific penalty imposed on each separate count. Thus, Mrs. Paul argues, the "illegal sentence" to which the district court can address its curative authority is the individual sanction attached to an individual count. 709 F.2d 310–11.

We need not analyze the widsom of this interpretation, however. *Henry* does not apply to this situation because the type of sanction involved here is a special type of restitution order that is not the same as a penalty imposed for a single violation. Mrs. Paul committed more than two acts of embezzlement, as she admits. In reality, she engaged in a continuing scheme that over time resulted, according to her own admission, in $118,000 of losses to the bank. Thus, the restitution order imposed by the district court encompasses victim losses arising from both Counts I and II, as well as from other, uncharged, portions of Mrs. Paul's scheme to defraud the bank. We have previously held that such an order is permissible. *See United States v. Suter*, 755 F.2d 523, 526–27 (7th Cir.1985); *United States v. Davies*, 683 F.2d 1052, 1054 (7th Cir.1982); *United States v. Roberts*, 619 F.2d 1, 2 (7th Cir.1979). This restitution order, then, related as much to Count II as to Count I, and the same order originally would have been proper (aside from the question, discussed below, of its precise amount) if the district judge had placed it on Count II instead of Count I. Under these circumstances, we can discern nothing in the Rules, the Advisory Committee Notes, or the case law prohibiting the district court from correcting the sentence by moving the restitution order to the other count.

■ Moreover, the district court's action does not implicate the double jeopardy clause of the Constitution. Recently, the United States Supreme Court reaffirmed its determination that " 'a sentenc[ing in a non-capital case] does not have the qualities of constitutional finality that attended an acquittal.' " *Pennsylvania v. Goldhammer*, —— U.S. ——, 106 S.Ct. 353, 353–54, 88 L.Ed.2d 183 (1985) (per curiam) (citing *United States v. DiFrancesco*, 449 U.S. 117, 134, 101 S.Ct. 426, 436, 66 L.Ed.2d 328 (1980)). Applying this principle, the Court held in *Goldhammer* and *DiFrancesco* that the double jeopardy clause does not bar the government from seeking to increase, where statutorily permitted, the sentence given a defendant. *Goldhammer*, 106 S.Ct. at 353; *DiFrancesco*, 449 U.S. at 138–39, 101 S.Ct. at 438. Similarly, we have held that this lack of constitutional finality permits the district court to increase the sentence on unchallenged counts after a defendant successfully appeals sentences on other counts. *United States v. Jefferson*, 760 F.2d 821, 823–24 (7th Cir.1985). These precedents indicate that the district court's modification of Mrs. Paul's sentence, which did not even cause an increase in sanction, does not run afoul of the double jeopardy clause.

The fact that the modification resulted in no increase in sentence also precludes the application of *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). In that case, the Supreme Court held that the due process clause prevents a district judge from increasing the sentence given a defendant after a successful appeal of conviction and retrial, unless the judge gives as reasons "objective information concerning identifiable conduct on the part of the defendant occurring after the time

ted restitution only as a condition of probation. Thus, restitution and incarceration could not be ordered on the same count for the June 6, 1980 embezzlement. Under 18 U.S.C. § 3579, however, restitution can be ordered in addition to any other authorized penalty. Section 3579 became effective on January 1, 1983, and therefore restitution would be proper on Count II even if incarceration had been imposed on that count.

of the original sentencing proceeding." 395 U.S. at 726, 89 S.Ct. at 2081. This holding has been translated into the rule that, absent such reasons, the district judge must resentence according to his original sentencing intentions. *See, e.g., United States v. Kuna,* 781 F.2d 104, 106 (7th Cir.1986). Finding that the rule in *Pearce* was designed to prevent the threat of vindictiveness and the corresponding chill on a defendant's willingness to exercise rights of appeal, we held in *United States v. Jefferson* that *Pearce's* proscription applies not only to resentencing after retrial, but also to resentencing after vacation of an illegal sentence. 760 F.2d at 825. Thus, Pearce would prohibit a district court from increasing a sentence upon a defendant's successful Rule 35(a) attack, in the absence of the required information of misconduct. As we noted above, no such increase is involved here. The district judge clearly resentenced Mrs. Paul according to her original intentions. In light of the nature of this modification, nothing in the Constitution prohibits the district court's action.

### III.

Having determined that the district judge had the authority to move the restitution order to Count II, we must address Mrs. Paul's assertion that the amount of the restitution is excessive. Mrs. Paul argues that the facts in her case do not satisfy the requirements we set forth in *United States v. Davies,* 683 F.2d 1052 (7th Cir.1982), for allowing restitution in an amount greater than that charged in the count to which the restitution order is attached. Although we find that restitution cannot be ordered in this instance in an amount exceeding $118,000, the sum Mrs. Paul admitted, during her plea hearing, that she had embezzled, we disagree with her claim that *Davies* was not satisfied.

We established a two-pronged test in *Davies* in order to determine when restitution may be ordered in excess of the amount charged in the relevant count. According to that test restitution is proper:

when (a) the defendant has obtained the proceeds as part of an ongoing scheme to defraud which extends over time, and (b) the amount of the damages to the victim has been established with specificity and admitted to by the defendant in the indictment, the plea agreement, and plea and presentence proceedings.

683 F.2d at 1054.

Mrs. Paul's two acts of embezzlement obviously were part of a scheme to defraud that continued over time, so that the first prong of the *Davies* test is satisfied. The second part of the test, however, is more troublesome here. From the facts recited in Part I of this opinion, it is clear that Mrs. Paul never signed an explicit acknowledgement that she would make restitution in a certain amount as part of her plea bargain. Nevertheless, restitution was raised and discussed during the plea hearing. Moreover, Mrs. Paul's attorney expressly indicated during the discussion of restitution that Mrs. Paul admitted to having caused losses of $118,000 to the bank. It is obvious from this context that as a result of that discussion Mrs. Paul had to have been aware of the fact that the district judge would impose a restitution condition to her sentence of at least $118,000. Since her plea hearing had not been concluded at that time, she did have an opportunity to object and withdraw her offer to plead. We conclude, therefore that Mrs. Paul did consent to make restitution in the amount of $118,-000.

The government argues that the district court was authorized to impose restitution in the full amount of $141,050, since Mrs. Paul failed to object to that amount at the time of sentencing. We refuse to extend our restitution rules that far, however, because such an extension would be unfair to the defendant and would result in no benefit to the criminal justice system. As we noted in *Davies,* the government benefits at the *plea bargain* stage from the practice of ordering restitution for the full, proven amount of loss. We reasoned that this rule would facilitate plea-bargaining in multi-count indictment cases, because the

government would be able to dismiss some counts upon the agreement of the defendant to make good the losses resulting from the acts charged therein. 683 F.2d at 1055. We see very little restricting the government's ability to garner this benefit under a requirement that an amount be established during the plea bargaining process, and we therefore conclude that the government's interest in leaving the precise amount of restitution undetermined until the sentencing stage is very slight. Weighed against this minimal governmental interest, the interests of due process and fairness to the defendant require that the government satisfy the *Davies* test at the plea bargaining stage before an amount of restitution greater than that charged can be ordered.

## IV.

Accordingly, we affirm the district court's modification of Mrs. Paul's sentence, but direct the court to reduce the amount of the restitution ordered to $118,-000.