**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jaime PEREDO, Defendant–Appellant.**

No. 88–2875.

United States Court of Appeals,
Seventh Circuit.

Argued April 11, 1989.
Decided Sept. 19, 1989.

Robert C. Perry, Asst. U.S. Atty., Office of the U.S. Atty., Deborah J. Daniels, Indianapolis, Ind., for the U.S., plaintiff-appellee.

Richard L. Darst, Mantel, Cohen, Garelick, Reiswerg & Fishman, Indianapolis, Ind., for Jaime Peredo, defendant-appellant.

Before BAUER, Chief Judge,
FLAUM and EASTERBROOK, Circuit Judges.

BAUER, Chief Judge.

The sole issue before us in this appeal is whether the district court improperly sentenced the appellant by ordering him to pay $62,300.00 in restitution as a condition for suspending a portion of his sentence. Because the restitution order lacks the proper factual foundation, we reverse and remand for resentencing.

Jaime Peredo, the president and majority shareholder of Midway Engineering Company, Inc. ("Midway"), was indicted by a grand jury for his participation in a scheme aimed at fraudulently obtaining engineering contracts with the City of East Chicago and involving federal funds. During the course of his pre-trial preparation, Peredo negotiated a plea agreement with the United States Attorney's Office. Peredo ultimately agreed to plead guilty to counts 1, 6, and 10 of the multi-count, superceding indictment. Count 1 of the indictment alleged that Peredo participated in a conspiracy to defraud the United States in violation of 18 U.S.C. § 371. Count 6 alleged that Peredo knowingly made false statements on his federal income tax return in violation of 26 U.S.C. § 7206(1). Count 10 of the indictment alleged that Peredo fraudulently overbilled the City of Hammond, Indiana, for labor costs incurred during the course of a contract to provide engineering services to the City. He allegedly consummated the fraud by unlawfully transporting a fraudulently procured check from the City in the amount of $33,242.42 in interstate commerce in violation of 18 U.S.C. §§ 2314 and 2.[1]

As for its part in the plea, the Government agreed to recommend that Peredo receive a suspended sentence, and that he be placed on five years probation on the condition that he cooperate with the Internal Revenue Service in filing amended personal income tax and corporate tax returns for the years 1981 through 1984. The Government also agreed to drop all remaining charges against Peredo.

After conducting a hearing on Peredo's petition to enter a guilty plea, the court sentenced him on April 18, 1988, to two

---

1. Pertinent portions of count 10 of the indictment specifically alleged that:

    1. On or about March 3, 1983, Midway Engineering Company, Inc. and the City of Hammond entered into an agreement for Midway Engineering Company, Inc. to provide engineering services to the City of Hammond, Indiana in relation to the reconstruction of various streets.

    \* \* \* \* \* \*

    7. On or about May 23, 1983 the defendant, JAIME PEREDO, did unlawfully cause to be transported in interstate commerce from Indianapolis, Indiana, in the Southern District of Indiana, to Chicago, Illinois, a Security taken by fraud, to wit: check number 68063 drawn on the Calumet National Bank, Hammond, Indiana in the amount of $33,242.42, knowing that over $5,000.00 of the proceeds of said security to have been taken by fraud. All in violation of Title 18, United States Code, Sections 2314 and 2.

years imprisonment for count 1 and two years for count 6, the terms to run concurrently. The court suspended this sentence and placed Peredo on five years probation on the condition that he agree to a period of four months confinement in a "jail-type or treatment institution," that he file amended tax returns for the years 1981 through 1984, and that he perform 300 hours of community service. The final condition for suspending the sentence was that Peredo "make restitution to the City of Hammond, Indiana in the amount of $62,300.00."

On August 8, 1988, Peredo moved to have his sentence reduced pursuant to Fed. R.Crim.P. 35. The district court denied the request on August 23, 1988. Peredo then timely filed the present appeal on September 2, 1988. He argues that the district court's restitution order renders his sentence illegal because the government did not raise the issue of restitution during its plea negotiations with him, nor did it seek restitution as part of their plea agreement or at his subsequent hearing on the plea.

■ For the purposes of Rule 35, a sentence is illegal if, among other things, it is one which the judgment of conviction does not authorize. *United States v. Plain,* 856 F.2d 913, 918 n. 5 (7th Cir.1988) (citing *United States v. Ames,* 743 F.2d 46, 47 (1st Cir.1984), *cert. denied,* 469 U.S. 1165, 105 S.Ct. 927, 83 L.Ed.2d 938 (1985)). There is no question that the district court was statutorily authorized to order restitution in this case. Under 18 U.S.C. § 3579, applicable to offenses occurring after January 1, 1983, a district court may order restitution to any victim of an offense "in addition to or in lieu of any other penalty authorized by law." Additionally, 18 U.S.C. § 3651 authorizes the court to order restitution as a condition for probation. *See United States v. Mischler,* 787 F.2d 240, 244 (7th Cir.1986). The district court did not specify which of these statutes it was drawing upon as the basis for ordering restitution. In any event, the question before us is whether the requirements for ordering restitution were adequately met.

■ We begin with the requirement that an order of restitution cannot exceed the actual losses arising from the offense for which the defendant was convicted. This is a statutory mandate under § 3579. *United States v. Barnette,* 800 F.2d 1558, 1571 (11th Cir.1986). *Id.* (citing 18 U.S.C. § 3579(b)(1)). Moreover, our cases have applied an "actual loss" requirement to restitution orders under 18 U.S.C. § 3651. *United States v. Lovett,* 811 F.2d 979 (7th Cir.1987). *See also Mischler,* 787 F.2d at 245 (collecting cases). This circuit has fortified the "actual loss" mandate by enumerating a number of additional requirements which must be met before restitution can be ordered, at least in a plea agreement case. *United States v. Paul,* 783 F.2d 84 (7th Cir.1986). These requirements seek to balance the defendant's interest in shouldering the expense for only the actual loses he or she caused and the government's interest in securing a plea by the defendant that includes a fair restitution figure. *Id.* at 88. To that end, we have held that the amount ordered as restitution "must be ascertained and delineated with an accurate computation and cannot be in excess of the loss actually caused and established, and must be clearly set out with specific findings and directions in the record and order of restitution." *Lovett,* 811 F.2d at 990.

That is not to say that an order of restitution cannot exceed the losses originally alleged in the count or counts of the indictment to which the defendant pleads guilty. In *Paul,* we reaffirmed that an order of restitution in excess of the losses alleged in the indictment is proper as long as the unlawful proceeds were obtained as part of an ongoing scheme to defraud, and the defendant consented to the damages figure in the plea agreement and at the subsequent hearing on the plea before the district court. *Paul,* 783 F.2d at 88 (citing *United States v. Davies,* 683 F.2d 1052, 1054 (7th Cir.1982)). We reasoned that this rule would facilitate plea agreements in cases involving multi-count indictments because "the government would be able to dismiss some of the counts upon the agreement of the defendant to make good the losses resulting from the acts charged

therein." *Paul,* 783 F.2d at 88–89. However, we rejected the government's contention in *Paul* that the district court was free to order restitution based on a figure that the defendant did not agree to, but that she failed to object to at the sentencing hearing:

> We see very little restricting the government's ability to garner [the benefits of a plea agreement in cases involving multi-count indictments] under a requirement that an amount be established during the plea bargaining process, and we therefore conclude that the government's interest in leaving the precise amount of restitution until the sentencing stage is very slight. Weighed against this minimal governmental interest, the interests of due process and fairness to the defendant require that the government satisfy the *Davies* test at the plea bargaining stage before an amount of restitution greater than that charged can be ordered.

*Id.* at 89. As a practical matter, we note that these requirements are likely to save numerous plea agreements from being scuttled at the eleventh hour when the defendant learns that an order of restitution apart from the agreement is being requested by the government or entered by the district court. Furthermore, these requirements will insure that the defendant is ultimately sentenced on the basis of accurate information.

█ In light of the foregoing principles, the order of restitution in the present case must be reversed. The only damages figure contained in count 10 of the indictment was the allegation that Peredo knew that "over $5,000.00" of the proceeds were taken by fraud. We suspect that this was alleged, not to establish a basis for an order of restitution, but to establish the jurisdictional requirement for 18 U.S.C. § 2314. For the order of restitution in the amount of $62,300.00 to be proper then, there must be evidence in the record that Peredo consented to the figure. There is no such evidence of consent in this case because neither restitution nor the $62,300.00 figure were ever brought up during the plea negotiations. The $62,300.00 figure was mentioned for the first time when Kevin Danko, a special agent for the Federal Bureau of Investigation, testified before the district court during the hearing on the plea agreement. As part of his explanation of the background of the case, Agent Danko testified that he compared Midway's job cost ledgers for the jobs performed for the City of Hammond with the actual invoices submitted by Peredo. He stated that from these sources, he was able to "estimate" the total that was overbilled. During the hearing, Peredo objected to these computations on the grounds that the job cost ledgers were not accurate. The following exchange is instructive:

> COUNSEL: We brought forth the evidence from the agent that the hours Mr. Peredo were listed as forty hours per week, and he obviously worked more than forty hours per week. The agent admits that.
>
> COURT: And so?
>
> COUNSEL: And so the—It shows that the records kept by the lady were inaccurate. I believe that we are entitled to show that the records were inaccurate.
>
> COURT: And what is that intended to prove?
>
> COUNSEL: It is intended to prove that, although Mr. Peredo did not keep track of the hours as he was required to do, that he did work more hours he turned in.
>
> COURT: And so what?
>
> COUNSEL: So he worked more hours than the agent has testified to, and the—although he obtained the amounts of money from City of Hammond by fraud, it was not as great as the agent has testified to.
>
> COURT: The amounts of the profiting from fraud were not as substantial? Is that your point?
>
> COUNSEL: Yes, your Honor.
>
> COURT: All right. And so what do you think the amount should be?
>
> COUNSEL: Well, we have no idea. Because Mr. Peredo did not keep track of his hours as required.

COURT: Anything further? Do you agree that it was over five thousand dollars?

COUNSEL: Yes, your Honor.

COURT: But less than thirty-three thousand.

COUNSEL: Yes, your Honor.

Peredo's factual objections notwithstanding, the district court entered the restitution order sua sponte and without rendering any specific findings.[2] Under these circumstances, we have no assurance that the figure drawn from Agent Danko's testimony is accurate. Because the figure was not reached in accordance with the requirements outlined in *Paul*, we reverse the order of restitution for the amount of $62,300.00, and remand to the district court with directions to resentence Peredo in a manner not inconsistent with this opinion.

2. We hasten to add that the district court's order also runs afoul of Fed.R.Crim.P. 11(e)(1). However, we need not address this issue as alternative grounds for reversing the sentence.