**UNITED STATES of America**

v.

**Danny SCHECK.**

**No. 89 CR 669.**

United States District Court,
N.D. Illinois, E.D.

Nov. 26, 1991.

Harvey M. Silets, Leigh D. Roadman, Silets & Martin, Ltd., Alan D. Blumenthal, Marvin Bloom, Chicago, Ill., for Danny Scheck.

Mark D. Pollack, U.S. Atty., James P. Fleissner, Chicago, Ill., for U.S.

## MEMORANDUM OPINION AND ORDER

ANN CLAIRE WILLIAMS, District Judge.

Defendant Danny Scheck was indicted and charged with mail and wire fraud and with violating certain provisions of the Commodity Exchange Act. After a seven week trial, defendant Scheck was found guilty on Count 10, which charged that defendant Scheck aided and abetted defendant Robert Mosky in cheating and defrauding Mosky's customer in violation of 7 U.S.C. §§ 6b(1)(A) and 13c(a). The jury was unable to reach a verdict on the other 19 counts in which defendant Scheck was named, and the court declared a mistrial on those 19 counts. In April, 1991, defendant Scheck entered into a plea agreement with the government. Pursuant to the agreement, Scheck pled guilty to two misdemeanor counts of accommodation trading in violation of 7 U.S.C. § 6c(a)(3)(A). The agreement further provided, in accordance with Fed.R.Crim.P. 11(e)(1)(C), "that as a part of the sentence the court shall order restitution in an amount not to exceed the amount of loss calculated pursuant to Guideline § 2F1.1(b)(1)(C)." Plea Agreement at ¶ 16. The parties also agreed that the government would recommend that the court impose a fine and term of probation within the applicable guideline ranges.

After defendant Scheck pled guilty to the aforementioned charges, the court referred the case to the probation department for the preparation of a presentence investigation report. In their report, the probation department found that "[t]he Guideline range for a fine is between $4,250 and $129,637.50." Presentence Report at 10. The report also stated that "[a]ccording to the government, the defendant should be ordered to pay $4,250 in restitution." *Id.* Defendant Scheck filed objections to these aspects of the presentence report. Defendant Scheck maintains that he should only have to pay $50 in restitution and that the Guideline range for his fine is between $2,000 and $20,000. The court will address each of these arguments in turn.

## RESTITUTION

Defendant Scheck maintains that he should not be ordered to pay restitution in the amount of $4,250, which represents one half of the government's estimate of the amount of loss caused by all of Scheck's illegal trading.[1] Defendant Scheck contends that he should only be ordered to pay restitution in the amount of $50 because the loss involved in his counts of conviction is only $50.[2] In support of this contention, defendant Scheck cites *Hughey v. United States*, 495 U.S. 411, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990). In *Hughey*, the Supreme Court held that under the restitution provisions of the Victim and Witness Protection Act ("VWPA") of 1982, 18 U.S.C. § 3579(a)(1),[3] restitution can only be or-

---

1. The government contends that the total amount of loss caused by Scheck's illegal trading is $8,500. However, the government takes the position that for purposes of restitution, the losses associated with trades between two defendants should be divided equally. Because all of Scheck's trades were with co-defendants, the government calculates that the amount of restitution Scheck should pay is $4,250.

2. Defendant Scheck and the government agree that the amount of customer loss involved in Count 10, the count upon which the jury found defendant Scheck guilty, is $50. The parties also agree that there is no customer loss involved in the two counts to which defendant Scheck pled guilty.

3. The restitution provisions of the Victim and Witness Protection Act have been recodified at 18 U.S.C. §§ 3663 and 3664.

dered for losses caused by the specific conduct that is the basis of the offense of conviction and cannot include losses caused by related conduct. While defendant Scheck does not argue that restitution in the case at bar is being ordered pursuant to 18 U.S.C. § 3579(a)(1),[4] the provision at issue in *Hughey*, he argues that the principles enunciated in *Hughey* should guide this court's determination of the amount of restitution defendant Scheck must pay.

The court finds that because restitution is not being ordered under the statutory provision at issue in *Hughey*, the holding of *Hughey*, which limits restitution ordered under § 3579(a)(1) to the amount of loss associated with the count of conviction, should not determine the amount of restitution the court orders defendant Scheck to pay. This is because there is no language in *Hughey* that indicates that the Court intended its holding to apply to restitution ordered under statutes other than § 3579(a)(1). The *Hughey* Court examined the language of § 3579(a)(1) very closely and determined that the terms "an offense" and "such offense" in § 3579(a)(1) refer to the offense of conviction. Nowhere in the *Hughey* opinion is there any statement that the Court intended to limit all restitution orders to the amount of loss caused by the offense of conviction.

In fact, as the defense acknowledges, there are several Seventh Circuit cases which hold that restitution for losses beyond the losses alleged in the count to which the defendant pleads guilty can be ordered as a special condition of probation under 18 U.S.C. § 3563. *See United States v. Peredo*, 884 F.2d 1029 (7th Cir.1989); *United States v. Mischler*, 787 F.2d 240 (7th Cir.1986); *United States v. Paul*, 783 F.2d 84 (7th Cir.1986); *United States v.*

*Davies*, 683 F.2d 1052 (7th Cir.1982). The government argues that the court should order defendant Scheck to pay $4250 as a special condition of probation under section 3563(b)(3).[5] To order restitution in an amount larger than the loss related to the offense of conviction under section 3563(b)(3), the court must determine that "the unlawful proceeds were obtained as part of an ongoing scheme to defraud, and the defendant consented to the damages figure in the plea agreement and at the subsequent hearing on the plea before the district court." *Peredo*, 884 F.2d at 1031. *See also, Davies*, 683 F.2d at 1054 (court can order restitution that exceeds the amount of loss related to the counts pled to when "(a) the defendant has obtained the proceeds as part of an ongoing scheme to defraud which extends over time, and (b) the amount of the damages to the victim has been established with specificity and admitted to by the defendant in the indictment, the plea agreement, and plea and presentence proceedings.").

█ In his reply brief, defendant Scheck argues that the court cannot order restitution in an amount greater than $50 as a condition of probation because the two requirements mentioned above, that the proceeds be obtained from an ongoing scheme and that the defendant admit to the amount of loss, have not been met. Specifically, defendant Scheck contends that he has *"not* been convicted nor pled guilty to any mail or wire fraud counts or scheme to defraud related thereto. Furthermore, ... Scheck has not agreed in his plea agreement to make restitution in an amount beyond the $50 directly involved in Count 10 of the superseding indictment." Scheck's Reply Brief at 5 (emphasis in original). While it is true that Scheck has not been convicted or pled guilty to any mail or

---

**4.** Section 3579(a)(1) of the VWPA, now codified at 18 U.S.C. § 3663(a)(1), provides that "[t]he court, when sentencing a defendant convicted of an offense under [Title 18 of the U.S.Code] or under subsection (h), (i), (j), or (n) of section 902 of the Federal Aviation Act of 1958 (49 U.S.C. 1472), may order ... that the defendant make restitution to any victim of such offense." Defendant Scheck was convicted of offenses un-

der Title 7 of the U.S.Code, so section 3663(a)(1) does not apply to his case.

**5.** 18 U.S.C. § 3563(b)(3) provides that "[t]he court may provide, as further conditions of a sentence of probation, ... that the defendant make restitution to a victim of the offense under sections 3663 and 3664 (but not subject to the limitations of section 3663(a))."

wire fraud scheme, he stated in his version of the offense and in the plea agreement that he "accept[s] the government's calculation that the loss from the same course of conduct falls within the range of Guideline § 2F1.1(b)(1)(C)." [6] *See* Defendants Version of the Offense attached to Presentence Investigation Report and Plea Agreement at para. 6(b)(iii). The court finds this statement, which is basically an admission that loss from defendant Scheck's "same course of conduct" was more than $5,000 but not more than $10,000, is sufficient to show that defendant Scheck caused more than $50 of customer loss as part of an ongoing scheme to defraud.

The court also finds that defendant Scheck's failure to explicitly admit to causing $8500 worth of loss with co-defendants does not preclude the court from imposing restitution in an amount in excess of $50. The reason why the aforementioned cases require the defendant to "admit" or "consent" to the damage figure is to insure that the defendant is sentenced " 'on the basis of accurate information.' " *Mischler*, 787 F.2d at 240, *quoting, United States v. Rone*, 743 F.2d 1169, 1171 (7th Cir.1984). In *Mischler*, the Seventh Circuit vacated a restitution order holding that the district court did not rely on accurate information in imposing restitution. *See also, Peredo*, 884 F.2d at 1033 (reversed restitution order because defendant disputed its accuracy and district court did not make findings as to why it thought the figure was accurate). In the case at bar, although the defendant has not admitted the accuracy of the government's specific restitution calculation, he has admitted to being responsible for losses which fall within the range of the government's calculations. Moreover, the court finds that the government used very careful and conservative methods to arrive at its amount of loss and restitution figures.[7] Defendant has not questioned the government's calculation methods, and has only refused to admit to their accuracy because he believes that under *Hughey* he should only be liable for the amount of loss involved in the count upon which he was convicted. Under the facts of this case, there is not a danger that defendant will be sentenced on the basis of inaccurate information. Therefore, the court has the option of ordering up to $4,250 in restitution as a condition of probation, under 18 U.S.C. § 3563(b)(3).

## FINE

■ As noted above, defendant Scheck maintains that pursuant to § 5E1.2(c) of the Guidelines, the fine range within which the court should impose a fine is between $2,000 and $20,000. The probation department contends that the appropriate fine range is between $4,250 and $129,637.50. The government asserts that the correct fine range is between $4,250 and $77,-

---

6. This section of the Guidelines, which is used to determine a defendant's base offense level for offenses involving fraud and deceit, provides for a two-point increase for offenses which cause a loss of more than $5,000, but not more than $10,000.

7. In the government's version of the offense, attached to the presentence investigation report, the government explained the methodology it used to arrive at the amount of loss from the offense and related conduct for each defendant. The government stated that it "analyzed the specific trades included in its proof at trial. (The proof included the acts of co-schemers Walsh and Fuhrman.) The loss figures do not include extrapolations of loss from illegal trading where specific illegal trades were not identified. Although not required to do so, the government chose to exclude from the calculation those trades for which a defendant was acquitted of all substantive counts. Losses were counted only where the evidence allowed a comparison of the price at which the non-competitive trade was executed and the price prevailing in the competitive market. Thus, off-market trades where the evidence suggested that the customer could have received a better fill were counted. Also counted were profits generated by prearranged trades executed at prices within the prevailing market range. In those cases, the trades created risk-free gains by withholding orders from the competitive market. Other financial benefits of illegal trades, such as commission flow, were not counted. Finally, each trader's estimated loss is that for which he is directly responsible through his own trading activity. The government's calculation does not count all the scheme conduct against all the traders." As noted above, regarding restitution for losses resulting from trades between two defendants, the government suggested "a formula whereby losses associated with trades between two defendants be divided equally."

287.50.[8]  In order to understand how defendant Scheck, the government and the probation officer arrived at these numbers, it is necessary to examine the text of § 5E1.2(c) of the Guidelines.

Section 5E1.2(c)(1) provides that "[t]he minimum of the fine range is the greater of: (A) the amount shown in column A of the table below [9]; or (B) the pecuniary gain to the defendant, less restitution made or ordered."  Section 5E1.2(c)(2) provides that "the maximum of the fine range is the greater of: (A) the amount shown in column B of the table below; [10] (B) twice the gross pecuniary loss caused by the offense; or (C) three times the gross pecuniary gain to all participants in the offense."  Defendant Scheck contends that in order to calculate which is greater, the amounts provided in the fine table or the alternative amounts which are based on the amount of pecuniary gain or loss caused by the offense, the court can only consider the pecuniary gain or loss caused by the offense of conviction.  The government and the probation department argue that when calculating the alternative amounts, the court can look to the gain or loss caused by all relevant conduct and not just the offense of conviction.[11]

In support of his contention that the alternative fine ranges can only be calculated by referring to the loss or gain associated with the offense of conviction, defendant Scheck once again relies on *United States v. Hughey, supra.*  As the court noted above, the *Hughey* Court narrowly interpreted the words "an offense" and "such offense" in the VWPA, which is a statute authorizing courts to order defendants to pay restitution to victims of certain offenses.  Defendant provides no reason why the court should use an interpretation of a restitution statute to interpret the Sentencing Guidelines dealing with fines, other than the fact that the VWPA and § 5E1.2(c)(2) of the Guidelines both contain the word "offense."  The court finds that the use of the word "offense" in both provisions, standing alone, is not an adequate reason to use the *Hughey* Court's narrow interpretation of the word "offense" in applying Guideline § 5E1.2(c)(2).

Moreover, the text of the rest of Guideline § 5E1.2 counsels against a narrow reading of the term "offense."  As the government points out, § 5E1.2(d)(1) states that when determining a fine, the court should consider "the need for the combined sentence to reflect the seriousness of the offense...., to promote respect for the law, to provide just punishment and to afford adequate deterrence."  Similarly, § 5E1.2(e) provides that "[t]he amount of the fine should always be sufficient to ensure that the fine, taken together with other sanctions imposed, is punitive."  In short, the emphasis in § 5E1.2 on punishment and deterrence indicate that the court should interpret the term "offense" in § 5E1.2(c)(2)(B) and (C) more broadly to include relevant conduct, rather than interpreting the term narrowly to include only the offense of conviction.

This broader interpretation of the term offense is also supported by the structure of § 5E1.2(c) itself.  Section 5E1.2(c)(1), which is used to determine the minimum fine, does not even mention the term "offense."  This section merely states that the court should look at "the pecuniary gain to the defendant, less restitution made or or-

---

**8.**  The court believes the government miscalculated the upper end of their proposed fine range.  The court assumes the government arrived at its maximum fine by trebling the total amount of restitution owed by all defendants.  However, the court re-added the government's restitution figures and came up with a total of $23,887.50.  This number trebled is $71,662.50, not $77,287.50.

**9.**  Because the parties have agreed that defendant Scheck's offense level is 10, column A of

the fine table provides a minimum fine of $2,000.

**10.**  Column B of the fine table provides a maximum fine of $20,000 for a defendant whose offense level is 10.

**11.**  The probation department's proposed maximum fine is much larger than the government's proposed maximum fine because the probation department trebled the total gain/loss caused by all the defendants, and not just the total restitution owed by all defendants.

dered." Presumably, because the word "offense" is not mentioned, the court can look at the pecuniary gain from all of defendant's relevant conduct to determine the minimum amount of the fine. Therefore, it would be illogical to confine the calculation of the *maximum* amount of the fine to the amount gained or lost due to the offense of conviction, when the *minimum* amount is calculated based on all of defendant's relevant conduct.

Finally, the court finds a broader interpretation of the word "offense" in this section to include relevant conduct is appropriate, given the overall structure of the Guidelines. As the government notes, "relevant conduct is properly included in calculating the outer limit of a defendant's possible period of incarceration, supervised release, or probation. It is anomalous to suggest that relevant conduct may properly be considered in setting the parameters for these aspects of a defendant's sentence, but *not* in determining the applicable maximum fine range pursuant to Guideline 5E1.2(c)(2)(C)." Government's Response to Defendant's Objections to Presentence Report at 7 (emphasis in original).

For these reasons, the court finds the appropriate fine range for defendant Scheck is between $4,250 and $71,662.50.[12]

---

12. The court agrees with the government that it is more appropriate to determine the maximum fine by trebling the amount of restitution owed by all defendants rather than by trebling the gross profit attributed to each defendant, as was done by the probation department. This is because the restitution figures more accurately reflect the "gross pecuniary gain to all participants." As noted above, when calculating the amount of restitution, the government split the profit in half if the illegal trade was between two co-defendants. The court finds this method results in a more accurate reflection of defendants' actual pecuniary gain than the gross estimated profit, which does not take into account whether or not the illegal trade which resulted in a profit was between two co-defendants.