**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Gaye FLOOD, Defendant–Appellant.**

No. 90–3495.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 13, 1991.

Decided June 16, 1992.

Rehearing and Rehearing In Banc
Denied July 23, 1992.

Thomas M. Daly, Asst. U.S. Atty., Crim. Div., Fairview Heights, Ill. (argued), for plaintiff-appellee.

Patrick B. Mathis (argued), Mathis, Marifian & Richter, Belleville, Ill., for defendant-appellant.

Before CUMMINGS, WOOD, Jr.,* and KANNE, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

A jury convicted Gaye Flood, a realtor, on one count of conspiring to defraud the United States and on six counts of defrauding the government by knowingly and willfully participating in a scheme, involving six residential properties, to falsely secure government-insured, home mortgages. 18 U.S.C. §§ 371, 1001, 1002. On the conspiracy count and on all but one of the substan-

tive counts, Flood was sentenced to concurrent terms of imprisonment for one year and one day. On the remaining substantive count, Count 7, she was sentenced to five years' probation and ordered to pay $259,809.94 restitution. Flood appeals her conviction and the order of restitution. For the reasons given below we affirm the conviction, vacate the order of restitution, and remand for resentencing.

The charged acts, enumerated in a 7–count, superseding indictment, took place in January through August 1984. All involved her knowingly and willfully submitting false loan applications: five to the Department of Housing and Urban Development ("HUD") through the Federal Housing Administration ("FHA") and one to the Department of Veterans Affairs ("VA"). Count 2 charged Flood participated with a purchaser, Paul Ray Bowler, in submitting a HUD–FHA application that overstated the sale price of a house on Pine St. in Granite City, IL, by $10,000. Counts 3 through 6 charged Flood participated with Bowler in submitting four separate, HUD–FHA applications that grossly overstated his assets and grossly understated his liabilities; each application was for a different house on Oakmont Dr. in Granite City. Count 7 charged Flood participated with purchasers Jack and Sharon Orwig in submitting a VA loan application that falsely identified their $8,100 loan liability as a cash-savings asset.

The charged acts and, correspondingly, the entire scheme were not so simple as portrayed above. The transactions were complex, involved other realtors as well as sellers, bankers and government employees, among others, and required detailed planning. Flood planned with Bowler, and she planned with Jack Orwig to bring the scheme to fruition. Accordingly, in Count 1 she was charged with a single, continuing conspiracy involving herself, Bowler, and Jack Orwig.

---

* Judge Wood, Jr. assumed senior status on January 16, 1992, which was after oral argument in this case.

Bowler defaulted on loans for the properties subsequently named in Counts 2, 3, 5, and 6, and the government lost $271,621.70. In a separate criminal proceeding Bowler pleaded guilty and was ordered to pay $11,-811.76 restitution. Thus, when sentencing Flood, the district court ordered her, in effect, to make up the balance.

## ANALYSIS

### CONSPIRACY

Flood's first argument on appeal is that she was improperly convicted on Count 1 and, consequently, was improperly convicted on Counts 2 through 7 because the jury had been given the *Pinkerton* instruction.[1] She finds two faults with her conviction on Count 1. First, she claims the government presented evidence of multiple conspiracies, although she was charged in the superseding indictment with only one; thus, she alleges, the jury was confused by this purported variance and erroneously convicted her. Second, she claims the government failed to present evidence that her alleged co-conspirators, Paul Ray Bowler and Jack Orwig, knew each other or that the three of them had a common, unlawful goal. We find no error in her conviction on Count 1 and no consequent infirmity in her conviction on the others.

▪ Firstly, Flood claims the jury improperly convicted her on Count 1, which charged a single conspiracy involving herself, Bowler and Orwig, because it believed she was involved in multiple conspiracies. In *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), the Court held it was prejudicial error to charge a person with a single conspiracy, present evidence of several conspiracies, and fail to instruct the jury that evidence of several conspiracies does not constitute proof of the single conspiracy charged. Here, however, the jury was specifically instructed, at Flood's request, that proof of multiple conspiracies was not proof of the single conspiracy with which she was charged and that the jury must acquit her if it found that the specific, single conspiracy did not exist.

It is the defendant's theory of defense as to Count 1 that the evidence fails to establish the existence of a single conspiracy involving the defendant, Paul Ray Bowler and Jack Orwig. You are instructed that, in addition to proving the defendant participated in a conspiracy, according to the previous instruction, the government must prove the defendant participated in the specific conspiracy charged in the [superseding[2]] indictment.

Proof of several conspiracies is not proof of the single overall conspiracy charged in the [superseding] indictment. What you must determine is whether the single conspiracy existed among the conspirators as charged in the [superseding] indictment. If you find that no such conspiracy existed then you must acquit the defendant of the conspiracy charged in Count 1.

If you find that the defendant was a member of a conspiracy other than the specific conspiracy charged in the [superseding] indictment, then you must ac-

---

1. Flood does not argue that the instruction failed to conform to the requirements set forth in *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946).

    The instruction as given reads as follows:

    A conspirator is responsible for offenses committed by her fellow conspirators if she was a member of the conspiracy when the offense was committed and if the offense was committed in furtherance of or as a natural consequence of the conspiracy.

    Therefore, if you find the defendant guilty of the conspiracy charged in Count 1 and if you find beyond a reasonable doubt that while she was a member of the conspiracy, her fellow conspirators committed the of-

fenses in counts 2, 3, 4, 5, 6 and 7 in furtherance of or as a natural consequence of that conspiracy, then you should find her guilty of counts 2, 3, 4, 5, 6 and 7.
Government's Jury Instruction No. 18; Tr. XII at 96–97.

2. The word, "superseding," was penciled into the typed instructions at the four locations noted in this quotation. None of these four insertions, however, appears in the trial record, vol. XII, page 96. We will not speculate on the cause of this disparity and note no party has attached any importance to it or even identified it.

quit the defendant of the conspiracy charged in Count 1.

Defendant's Jury Instruction No. 11; Tr. XII at 96.

It is difficult to see how the alleged variance could have been a factor in Flood's conviction. The jury was properly instructed that proof of several conspiracies is not proof of the single conspiracy charged. *United States v. Papia,* 560 F.2d 827, 838 (7th Cir.1977) (citing *United States v. Varelli,* 407 F.2d 735, 746 (7th Cir.1969)). Accordingly, the risk of error, or, at least, prejudicial error, was greatly diminished, if not eliminated altogether. Moreover, to Flood's advantage the jury was instructed that "the government must prove [she] participated in the specific conspiracy charged." Tr. XII at 96. In contrast, we have said that a jury should not be told to acquit a defendant who "did not join *exactly* the conspiracy charged. A jury may be told to convict a defendant who committed some variant of the events charged in the indictment, so long as the variant is also illegal." *United States v. Wozniak,* 781 F.2d 95, 97 (7th Cir.1985) (emphasis added).

■ Additionally, the need to precisely distinguish between a single conspiracy and multiple conspiracies diminishes where the defendant is the hub that conspired with the spokes. In *United States v. Napue,* 834 F.2d 1311, 1333 (7th Cir.1987), we stated, "Even if there were two conspiracies, [where the defendant is the hub of these conspiracies] it is usually not necessary to explore the ways in which the plan might be recast as a series of more limited agreements." That is because the danger of transferring guilt from one defendant to another is unlikely. *Id.* (citing *Kotteakos,* 328 U.S. at 774, 66 S.Ct. at 1252, where the peripheral defendants' convictions were reversed and the hub, Simon Brown, had pleaded guilty).

■ Whether Flood engaged in no conspiracy, only one conspiracy or several conspiracies was a fact for the jury to determine. *United States v. Molt,* 772 F.2d 366, 369 (7th Cir.1985), *cert. denied,* 475 U.S. 1081, 106 S.Ct. 1458, 89 L.Ed.2d 715 (1986)

(citation omitted); *United States v. Townsend,* 924 F.2d 1385, 1389 (7th Cir.1991) (citation omitted). The jury was properly instructed; the jury made its determination on the basis of the evidence; and Flood was not prejudiced in the process by the variance she claims to have seen.

■ Secondly, Flood argues no single conspiracy was proved because Bowler and Orwig did not know each other and because the three of them had no common, unlawful goal. In this argument Flood misunderstands her role in the conspiracy, misconstrues the knowledge requirement, and confuses goal, or purpose, with means.

■ Flood was the hub, the focal, key or central member, of a wheel conspiracy; both the facts and case law, therefore, place her in a different light than her confederates, Bowler and Orwig, who were the spokes. A peripheral defendant's conspiracy conviction may be reversed where (1) multiple conspiracies are proved but only one is charged, (2) the jury is not properly instructed regarding that distinction, and (3) the defendant lacked knowledge of the reach or likely reach of the conspiratorial network and the identity or possible existence of remote participants. *See Kotteakos,* 328 U.S. 750, 66 S.Ct. 1239. We have already determined that the jury was properly instructed and that Flood was not prejudiced by any alleged variance. Furthermore, because conspiracies are naturally secretive, the law permits conviction upon the government's sufficiently showing "the essential nature of the plan and their[, the defendants',] connections with it, without requiring evidence of knowledge of all its details or of the participation of others." *Blumenthal · v. United States,* 332 U.S. 539, 557, 68 S.Ct. 248, 256, 92 L.Ed. 154 (1947) (footnote omitted). Thus, we have stated, "[A] person does not need to know or participate in every detail of the conspiracy, or to know all the conspiracy's members." *United States v. Jackson,* 935 F.2d 832, 844 (7th Cir.1991) (quotation marks and citation omitted). Here neither Bowler nor Orwig is the defendant; Flood is. Consequently, whether Bowler and Orwig

knew each other, either by name or as members of the conspiracy, and whether they conspired among themselves is not relevant. What is relevant is that Flood was the hub, that she knew and conspired with her spokes, Bowler and Orwig, and that she was fully aware of the plan, perhaps even its most intimate details.

■ Flood also argues that she, Bowler and Orwig did not have a common goal and that their goals were lawful ones: she sought commissions on the sale of real estate and to help her would-be purchasers secure government-insured loans; Bowler sought financial gain through real-estate transactions; and Orwig sought a home for his family. The jury found otherwise. It found not only that Flood's goal was to defraud the government but also that she conspired with Bowler and Orwig to do so. A century ago, the Court in *Pettibone v. United States*, 148 U.S. 197, 203, 13 S.Ct. 542, 545, 37 L.Ed. 419 (1893), aptly described conspiracies and their goal: "A conspiracy is sufficiently described as a combination of two or more persons, by concerted action, to accomplish a criminal or unlawful purpose, or some purpose not in itself criminal or unlawful, by criminal or unlawful means...." Thus, whether Flood used real-estate sales or some other means to get the money, her goal was unlawful. And as *Pettibone* and its progeny make clear, it matters not whether her goal was to defraud the government—an unlawful purpose—or simply to earn a commission and help her purchasers by unlawful means, such as overstating the selling price or a potential buyer's financial worth. What matters is that by planning with Bowler and Orwig to defraud the government by whatever means, Flood conspired with them to defraud the government.

EVIDENCE

■ Flood's second argument on appeal is that she was prejudiced and, thus, improperly convicted because the court erroneously admitted certain testimony by FBI Agent Robin Williams. The challenged testimony seems innocuous enough. In explaining how her prior work for the Inspector General at the Department of Housing and Urban Development had benefitted her in culling the records of recently foreclosed, government-insured mortgages in the Southern Illinois District, Agent Williams testified:

Well, what I found in past years, usually if properties, if over maybe four or five properties that were serviced by the same mortgage company had gone into default or foreclosure within six months of the time the loan was actually applied for, I realized usually there was some kind of fraud involved.

Tr. III at 21. Flood's counsel timely objected and moved to strike Agent Williams's testimony, claiming it was "speculative, conjectural and not admissible against my client in this case."

■ Claims of reversible error in a trial court's decision to admit evidence are reviewed only for abuse of discretion, giving the judge great deference. *Geitz v. Lindsey*, 893 F.2d 148, 150 (7th Cir.1990). The trial court here could reasonably find Agent Williams was testifying that in her experience fraudulent loans typically had certain factors in common—namely, more than four or five properties, serviced by the same mortgage company, going into default or foreclosure within six months of the loan application date. Agent Williams had also testified she narrowed the scope of her investigation by searching the 150 to 200 loans in her file for these factors. Thus, the court could further conclude that the objected-to testimony was not unfairly prejudicial, that it was neither speculative nor conjectural with regard to Flood's guilt or innocence, and that the jury would not attribute to Flood the criminality sometimes found in the class of loan described.

Witnesses may testify, frequently are expected to testify, and in many instances are extensively cross-examined about their experience, for example, as criminal investigators. In establishing that probable cause existed for an arrest or a search, law-enforcement officers commonly testify that their experience indicates a certain behavior pattern or a particular combina-

tion of circumstances is indicative of—as opposed to proof of—criminal activity. The trial court did not abuse its discretion in admitting what appears to us clearly admissible testimony.

■ Flood also claims her conviction should be reversed because the prosecutor committed various acts of prejudicial misconduct. These acts purportedly include introducing the above-challenged testimony of Agent Williams, introducing "perjurious testimony," Agent Williams's threatening a witness with prosecution, and obstructing preparation of the defense's case. These unsubstantiated claims are meritless.

## RESTITUTION

Flood's third and final argument is that the district court erred in its order of restitution, first, by failing to enter specific findings regarding her ability to pay and, second, by ordering restitution on Count 7 although that charged act caused the government no loss.[3] The government first responds that a sentencing court need only consider a defendant's ability to pay restitution, as the court did, but that it need not formally enter its findings. The government then concedes the trial court erred in ordering restitution on Count 7 but claims it was only a clerical error because the court had intended to order restitution on Counts 2, 3, 5, and 6, where the government did show the charged acts caused the specified loss. Thus, the government asks us to remand for correction under Fed. R.Crim.P. 36. Flood replies the error was not clerical and that a remand for resen-

tencing is barred by the constitutional prohibition on double jeopardy.

The government concedes that restitution should not have been attached to Count 7 because the charged act caused no loss. We accept the government's concession.[4] Thus, we need not consider Flood's other claim of error: namely, that the court "was obliged to make a finding as to the Defendant's financial circumstances" but did not.[5]

■ Citing Fed.R.Crim.P. 36, the government asks us to remand the case for correction of what it calls a "clerical error." Flood argues the error is not "clerical" and that Rule 36 is inapplicable because the court's oral pronouncement and its written order agree: both attached restitution to Count 7. We need not decide whether the error was clerical or if Rule 36 provides the appropriate remedy. This court has long had the authority to vacate a district court's order of restitution and to remand it for resentencing. Two examples suffice: *United States v. Shelby*, 573 F.2d 971 (7th Cir.), *cert. denied*, 439 U.S. 841, 99 S.Ct. 132, 58 L.Ed.2d 139 (1978), and *United States v. Brothers*, 955 F.2d 493 (7th Cir.1992).

The government argues the amount of restitution ordered, $259,809.94, equals the loss it incurred because of the criminal acts for which Flood was convicted on Counts 2, 3, 5, and 6 minus the $11,811.76 restitution that Bowler, who had defaulted on the corresponding loans, had been ordered to pay.

---

3. The district court did not state under which statutory provision or provisions it ordered restitution. Flood suggests it was under either section 3651 or sections 3663 and 3664 of Title 18, U.S.C. The government asserts sections 3579 and 3580 of Title 18 are the appropriate, controlling sections. Although the difference may be important, neither party cites authority for or develops its position. The district court should resolve this matter on remand.

4. The government has not argued that Flood waived her claim of error by failing to raise it in the district court. *See, for example, United States v. Adamo*, 882 F.2d 1218, 1233 (7th Cir. 1989), and *United States v. Mizyed*, 927 F.2d 979, 982 (7th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 2065, 114 L.Ed.2d 470 (1991).

5. Recently, but well before the parties here submitted their briefs, we stated, "Although the VWPA [ (the Victim and Witness Protection Act, 18 U.S.C. § 3663) ] does require the district court to make findings on the record, the requirement is applicable only when the court refuses to order full restitution." *United States v. Arvanitis*, 902 F.2d 489, 496 (7th Cir.1990) (citations omitted). Moreover, in *United States v. Fox*, 941 F.2d 480, 485 (7th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 1190, 117 L.Ed.2d 431 (1992), we observed that, "although the district court should consider these factors[, including the defendant's financial condition,] on the record, it need not always do so."

Flood does not challenge this argument. Moreover, at the sentencing hearing and, subsequently, at oral argument she expressly accepted the government's calculation of its loss. We, therefore, accept the government's argument.

■ Flood contends, however, that the constitutional prohibition of double jeopardy bars her being resentenced, that attaching an order of restitution to counts on which it was not originally ordered would impermissibly enhance her sentence. In support of her contention Flood points out that (1) she has been convicted and sentenced on all seven counts, (2) she was ordered to pay restitution only on Count 7, albeit improperly, (3) on the other six counts she was sentenced to concurrent terms of incarceration but not ordered to pay restitution, (4) she was released from prison in September 1991, and (5) she is now serving the term of probation ordered on Count 7.

We dispensed with the same propositions in *United States v. Paul*, 783 F.2d 84, 87–88 (7th Cir.1986). The defendant, Mrs. Paul, pleaded guilty to and, thus, was convicted on two counts of embezzlement that, together, constituted an ongoing scheme. She was sentenced to a term of imprisonment and ordered to pay restitution on one of the counts, and she was fined and given probation on the other. Claiming the order of restitution constituted an illegal sentence, she petitioned the district court for correction of sentence under Fed.R.Crim.P. 35(a). Mrs. Paul had completed her term of incarceration and begun her term of probation when the district court obliged, not by vacating the restitution order as she had requested, but by shifting it from one count to the other. Mrs. Paul appealed, raising many of the same issues Flood does; in particular, double jeopardy and unlawful enhancement by ordering restitution on a count to which restitution had not previously been attached.

In *Paul* we held double jeopardy was not implicated. *Id.* at 87 (citing, inter alia, *Pennsylvania v. Goldhammer*, 474 U.S. 28, 106 S.Ct. 353, 88 L.Ed.2d 183 (1985), and *United States v. DiFrancesce*, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980)). Neither is it implicated here. True, Rule 35(a) has not been utilized or raised here, and Flood did not plead guilty; but those differences do not distinguish the cases. The present situation is analogous to that in *Paul*. The district court is asked, in this instance by a court of appeals rather than the defendant, to modify its originally ordered sentence. It may do so.

Moreover, in *Paul*, we noted that a district court may "increase the sentence on unchallenged counts after a defendant successfully appeals sentences on other counts." *Id.* (citing *United States v. Jefferson*, 760 F.2d 821, 823–24 (7th Cir.), *vacated on other grounds*, 474 U.S. 806, 106 S.Ct. 41, 88 L.Ed.2d 34 (1985)[6]). Accord-

---

**6.** Over a three-year span Jefferson's case visited this court three times. First, she appealed the imposition of consecutive sentences for her convictions of distributing controlled substances and of engaging in a continuing criminal enterprise. 21 U.S.C. §§ 841(a)(1), 848. We found the section 841 offenses were predicates to the section 848 offense and that Jefferson had impermissibly been twice put in jeopardy; thus, we vacated the sentences and remanded. *United States v. Jefferson*, 714 F.2d 689 (7th Cir. 1983). The district court then resentenced Jefferson to an equally long term of incarceration under section 848, which effectively increased her sentence because that section precludes parole. She appealed, and we affirmed. *United States v. Jefferson*, 760 F.2d 821 (7th Cir.1985). The Supreme Court summarily vacated and remanded with instructions to reconsider the case in light of its recent decision in *Garrett v. United States*, 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d

764 (1985). *Jefferson v. United States*, 474 U.S. 806, 106 S.Ct. 41, 88 L.Ed.2d 34 (1985). We did in *United States v. Jefferson*, 782 F.2d 697 (7th Cir.1986); what we did on remand, though, is not relevant here.

In fact, the history of the *Jefferson* cases would not be relevant here were in not for the fact that the *Paul* court cited the second, and vacated, *Jefferson* case. There are two points. First, the second *Jefferson* case was vacated for a reason other than the point of law cited in *Paul*. Second, *Jefferson* was vacated by the Supreme Court on October 7, 1985; oral argument in *Paul* was two months later, December 4, 1985, and the case was not decided until February 6, 1986. From this scenario we conclude the *Paul* court was well aware that *Jefferson* had been vacated but chose to cite the case for a point of law it considered nonetheless valid. We do not question that choice.

ingly, we held that, because Mrs. Paul had been ordered to make restitution for the ongoing scheme on which she was convicted and because the total sentence was not enhanced, "nothing in the Constitution prohibits the district court's action." *Id.* at 88. Likewise, Flood was convicted of an ongoing scheme, one that ran from January 1984 into August of the same year. Thus, shifting the order of restitution from Count 7 to four others on which Flood was convicted would accord with our holding in *Paul.*

Lastly, we are mindful of the holding in *Hughey v. United States,* 495 U.S. 411, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990), that restitution may not be ordered under the Victim and Witness Protection Act beyond the loss caused by the offense of conviction. 18 U.S.C. §§ 3579, 3580 (renumbered to 3663 and 3664, effective November 1, 1986). Also, as the court in *Paul* stated, *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), proscribes an increase in "the sentence given a defendant after a successful appeal of conviction and retrial, unless the judge gives as reasons 'objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding.'" *Paul,* 783 F.2d at 87 (quoting *Pearce,* 395 U.S. at 726, 89 S.Ct. at 2081). We further stated that the proscription also applies to resentencing after vacating an illegal sentence. *Id.* at 88 (citing *Jefferson,* 760 F.2d at 825). Here, Counts 2, 3, 5, and 6 are offenses of conviction; at the sentencing hearing Flood conceded the amount of loss; and the government has not indicated it would seek more than the $259,809.94 restitution previously ordered. Therefore, if on remand the court shifts the order of restitution to Counts 2, 3, 5, and 6 and does not increase the total amount of restitution ordered, Flood's sentence will not have been enhanced and the constraints imposed by *Pearce* and *Hughey* will not be implicated.

## CONCLUSION

Therefore, we affirm Flood's conviction, vacate the order of restitution, and remand this case to the district court for resentencing consistent with our holding.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.